UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**08 CV 6135**

NONITO DONAIRE AND
JAMES KIRKLAND,

        Plaintiffs,

v.

GARY SHAW PRODUCTIONS, LLC

        Defendant.

Case No.:

CIVIL ACTION

COMPLAINT AND
JURY DEMAND

RECEIVED
JUL 03 2008
U.S.D.C. S.D. N.Y.
CASHIERS

## THE PARTIES

1)    Plaintiff Nonito Donaire is a boxer who is a citizen of the Republic of the Philippines and resides in the State of California.

2)    Plaintiff James Kirkland is a boxer who is a citizen of the State of Texas.

3)    Defendant Gary Shaw Productions, LLC (hereinafter "GSP") is upon information and belief, a Limited Liability Company organized under the laws of the State of New Jersey and with principal offices located in New Jersey.

## THE AMOUNT IN CONTROVERSY

4)    The value of the amount in controversy in this action exceeds $75,000.00 exclusive of interest and costs.

## JURISDICTION

5)    This Court has jurisdiction over this action by virtue of 28 U.S.C. §1331 in that this action arises under the laws of the United States.

6)    This Court additionally has jurisdiction by virtue of 28 U.S.C. §1332 in

that the amount in controversy exceeds $75,000.00 and this action is between citizens of

different states (as to Kirkland) and between citizens of a state and of a foreign state

(Donaire).

7)    This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

### VENUE

8)    Venue is proper in this district pursuant to 28 U.S.C. §1391(b) in that a

substantial portion of the activities complained of took place in this district and because

Defendant may be found in this District, and because the parties have consented to

jurisdiction over disputes in this District.

### GENERAL STATEMENT OF FACTS AS TO DONAIRE

9)    Nonito Donaire is an accomplished professional prizefighter. His record

as of this filing is annexed as Exhibit "A."

10)    Defendant GSP is a boxing promotion company.

11)    As of May 2007 and at all times relevant to this action GSP was the

promoter of a boxer named Vic Darchinyan, who, upon information and belief is illegally

managed by GSP's principal, Gary Shaw's (hereinafter "Shaw") son Jared Shaw in

violation of the firewall provision of the Muhammad Ali Act.

12)    In May of 2007 Darchinyan was the holder of the IBF and IBO Flyweight

titles.

13)    Plaintiff Nonito Donaire was desirous of engaging in a bout with

Darchinyan. To that end his managers entered into discussions with Donaire's managers.

Shaw informed Mr. Donaire's managers that he would only enter into a contract with

Donaire to fight Darchinyan if Donaire entered into a multi year promotional contract.

This demand is expressly forbidden under the Muhammad Ali Act (15 U.S.C. §6301, et. seq.) which limits demands for future rights in such a situation to one year.

14)    Mr. Donaire, in order to obtain his chance at the title, entered into the contract which is annexed hereto as Exhibit "B." GSP demanded this contract in violation of the Act as described in paragraph 15.

15)    As part of the obligations of GSP under the contract it promised to promote at least two bouts in the 12 month period during which Mr. Donaire was a champion.

16)    Mr. Donaire fought and defeated Vic Darchinyan on July 7, 2007, thereby becoming the IBF and IBO Lightweight Champion.

17)    GSP has not met the contractual minimum required under the contract. In fact, in the year since Mr. Donaire became champion he has provided only one bout to Mr. Donaire. This has the effect of significantly impairing Mr. Donaire's career.

18)    The Muhammad Ali Act requires that prior to receiving any consideration for a bout the promoter must disclose the income which he is receiving for the bout. In the absence of providing such disclosures the Act prohibits a promoter from obtaining consideration for a bout. In fact, Shaw failed and in fact refused to provide Mr. Donaire with the statements required but did, in fact, in knowing and direct violation of the Act, took and used payment for the bouts in which Donaire participated.

19)    By letter dated May 30, 2008 (Exhibit "C") and sent via facsimile counsel for Mr. Donaire informed Shaw of the issues raised in this Complaint, demanded that those which could be cured be cured, and notified Shaw of the incurability of the violation of the Act prohibiting the demanding of future rights in excess of a year. GSP

ignored the letter and made no effort to cure.

20)    When GSP did not respond follow-ups were sent to counsel for GSP.  A response was promised but none came.  See Exhibits "D" and "E."

21)    On June 12, 2008, when Shaw refused to respond and took no steps to cure the defaults and curable improprieties, Mr. Donaire, through counsel declared the contract to be in breach and informed Shaw that he would proceed to attempt to mitigate his damages with a full reservation of rights.  That letter, sent via facsimile, is annexed as Exhibit "F" and incorporated herein by reference.

22)    Mr. Donaire proceeded to negotiate with several promoters, ultimately entering into a contract with a company named Top Rank, Inc. for a series of bouts.  No bout is scheduled before July 7, 2008.

23)    On Friday, June 27, 2008 Shaw called Robert Arum, one of the principals of Top Rank, Inc., threatening litigation if Top Rank, Inc. promoted bouts involving Mr. Donaire.  Thereupon, as a follow-up, GSP's attorney sent a letter to Top Rank's attorney threatening litigation against Top Rank, Inc.  See Exhibit "G."

### GENERAL STATEMENT FACTS AS TO KIRKLAND

24)    James Kirkland is a prominent boxer.  His record is annexed as Exhibit "H."  As of the time of this filing he has a record of 22 wins, with 19 knockouts, with no losses.

25)    Mr. Kirkland entered into a contract with GSP on February 27, 2006.  A copy of that contract is annexed as Exhibit "I."

26)    To induce Mr. Kirkland and his managers to enter into the contract GSP agreed that it would provide him with five bouts for each contract year.  As a further

inducement GSP expressly agreed contractually to adhere to the disclosure provisions of the Muhammad Ali Act.

27)    For a rising boxer, exposure to the public is crucial in advancing that boxer's career.  That exposure comes through the bouts a boxer fights.  Conversely, failure to promote a boxer in regular bouts harms his career.

28)    Despite a contractual requirement to provide Mr. Kirkland with five bouts in the second year of his contract, GSP only provided three.

29)    By letter dated March 10, 2008 Mr. Kirkland's co-manager pointed out the fact that he was not given the proper number of bouts and requested that GSP at least provide economic compensation.  See Exhibit "J."  That letter was ignored.

30)    On May 17, 2008 Mr. Kirkland fought for GSP on a card involving three televised bouts.  He has been offered no bouts in the second quarter of 2008, and there was only vague discussion of a potential offer for a bout in the third quarter.  As Mr. Kirkland's contract calls for four bouts in this contract year it is obvious that GSP is falling behind on its obligations for the current year as well.

31)    Originally Shaw promised that Mr. Kirkland would be the main event on a May 17, 2008 card.  For a main event on a card such as the May 17 card Mr. Kirkland's minimum purse was supposed to be $75,000.00 by contract, but because of the amounts purportedly being paid by HBO GSP offered $100,000.  In a classic bait and switch GSP made the bout a co-feature and paid Mr. Kirkland only $30,000.00.

32)    Despite both a statutory and contractual obligation to do so GSP has never provided to Mr. Kirkland any of the disclosures required under the Muhammad Ali Act.  Further, despite the express requirements of the Act GSP has taken compensation despite

failure to provide the Muhammad Ali Act statements required. This is expressly prohibited under the Act.

33) By letter of June 17, 2008 Michael Miller, co-manager of James Kirkland notified GSP that due to its actions Mr. Kirkland was declaring the contract in breach and was terminating the contract. See Exhibit "K."

34) Subsequent to June 17, 2008 it was publicly reported that other promoters were prepared to offer contracts to James Kirkland.

35) Shaw, despite the breaches by GSP and despite the letter of Mr. Miller dated June 17, 2008, telephoned a representative of Sycuan Ringside Promotions a boxing promotion company, and threatened to sue that entity if it contracted with Mr. Kirkland. Similarly, it also called Top Rank, Inc. to threaten that entity and, further, its counsel wrote to Top Rank, Inc. claiming, inaccurately, that it still has contract rights to Mr. Kirkland. See Exhibit "L."

## TORTIOUS INTERFERENCE WITH CONTRACT AND TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (AS TO ALL PLAINTIFFS)

36) All prior allegations are incorporated herein by reference.

37) Neither Nonito Donaire nor James Kirkland were induced by any third party to declare their contracts with GSP terminated. They did so because they and their managers had a good faith belief that they were legally entitled to do so.

38) The intent by GSP and Shaw in threatening third parties is to stall the careers of Plaintiffs in recognition that by stalling their careers it can coerce them, extra judicially, to continue to be promoted by GSP despite their legal rights.

39) GSP knows or should know that as a matter of law if a contract has been

declared terminated by a party no cause of action for tortious interference lies with respect to third parties which subsequently contract with that party.

40)     As with any athlete, the active competitive span is limited. Thus the delays of any athlete's career, and in particular the careers of boxers, including Plaintiffs, causes irreparable injury.

41)     This irreparable injury is particularly true for Nonito Donaire in that as World Champion, in addition to the other factors set forth in paragraph 40 above, he is obligated to defend his title or lose it.

42)     This irreparable injury is also particularly true for James Kirkland in that he is at a point in his career where he needs to fight to distinguish himself from other young prospects.

43)     GSP is interfering with the contract rights of Plaintiffs and/or the prospective economic advantage of Plaintiffs without legitimate reason.

44)     As a result of the above both Plaintiffs are suffering irreparable damage and will continue to do so absent equitable relief from the Court.

**WHEREFORE**, Plaintiffs request that the Court enter injunctive relief barring Defendant and those acting in concert with it from interfering with the careers of Plaintiffs, including but not limited to barring it from threatening or intimidating third parties.

**WHEREFORE**, Plaintiffs request judgment in the amount of their damages, punitive damages, costs and counsel fees.

**WHEREFORE**, Plaintiffs request such other relief as may be deemed just and proper by the Court.

## COUNT 2

## VIOLATIONS OF THE MUHAMMAD ALI ACT

45)    All preceding allegations are adopted herein by reference.

46)    15 U.S.C. §6307(e) provides that "A promoter shall not be entitled to any compensation directly or indirectly in connection with a boxing match until it provides to the boxer it promotes: 1) the amounts of compensation or consideration that a promoter has contracted to receive from such match; 2) all fees, charges, and expenses that will be assessed by or through the promoter on the boxer pertaining to the event ...; 3) any reduction in purse contrary to a previous agreement.

47)    In what appears to be a pattern and practice GSP has failed and refused to provide the required statements to both Mr. Donaire and Mr. Kirkland, but has nonetheless received compensation for their matches.

48)    15 U.S.C. §6307(b), inter alia, provides that "a contract provision should be considered to be in restraint of trade, contrary to public policy, and unenforceable against any boxer to the extent that it ... for a period greater than 12 months" if it is required as a condition for a title bout with another boxer who is already under contract to the promoter.

49)    This is precisely the situation with Mr. Donaire in that contract rights in excess of 12 months were demanded for Mr. Donaire to fight for the title against a boxer promoted by GSP.

50)    GSP is well aware that it has been acting in violation of the Muhammad Ali Act in these and in other respects.

51)    15 U.S.C. §6309(d) give a boxer a private right of action for recovery of

damages, costs, and reasonable attorney fees for violations of the Muhammad Ali Act.

**WHEREFORE,** Plaintiffs demand judgment in the amount of their damages.

**WHEREFORE,** Plaintiffs demand costs, expenses and counsel fees incurred in bringing this action.

**WHEREFORE,** Plaintiffs request that the Court enter injunctive relief barring Defendant and those acting in concert with it from interfering with the careers of Plaintiffs, including but not limited to barring it from threatening or intimidating third parties.

**WHEREFORE,** Plaintiffs demand such other relief as may be deemed just and proper by the Court.

<u>**COUNT 3**</u>

**BREACH OF CONTRACT/BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

52)    The preceding allegations are repeated as though set forth fully herein.

53)    GSP has breached its contracts with Plaintiffs, causing damages to each of them.

54)    GSP has breach the covenant of good faith and fair dealing inherent in all contracts causing damages to both Plaintiffs.

**WHEREFORE,** Plaintiffs demand judgment in favor of each in the amount of his damages.

**WHEREFORE,** Plaintiffs demand counsel fees and costs.

**WHEREFORE**, Plaintiffs demand such other relief as may be deemed just and proper by the Court.

                                             PATRICK C. ENGLISH, ESQ. (PCE 7898)
DINES AND ENGLISH, L.L.C.
685 VAN HOUTEN AVENUE
CLIFTON, NEW JERSEY 07013
(973) 778-7575
**Attorneys for Plaintiffs**

Date: July 2, 2008

## JURY DEMAND

Trial by jury is hereby requested on such issues as are legally appropriate.

                                             PATRICK C. ENGLISH, ESQ. (PCE 7898)
DINES AND ENGLISH, L.L.C.
685 Van Houten Avenue
Clifton, New Jersey 07013
**Attorney for Plaintiffs**

Date: July 2, 2008

# EXHIBIT A





SHARPEN YOUR ENGLISH
The Expert Writing Solution

www.whitesmoke.com    ✓ Grammar check  ✓ Spelling check  ✓ Text enrichment  ✓ Thesaurus  ✓ Dictionary  ✓ Resume Templates    GET IT NOW!

BoxRec

**NEW** Samil Sam v Paulo Vidoz - Live
**NEW**

English

home | name | date | ratings | schedule | results | location | title | forum | encyclopaedia | contact | editors
boxer location | manager location | Register

## boxer: Nonito Donaire



CELEBRATE YOUR INDEPENDENCE
Powered by (intel)
SMALL BUSINESSES SAVE BIG ON FOURTH OF JULY
LATITUDE™ D630 LAPTOP
Increase your view with a 14.1" screen in a package that starts at 5.1lbs.*
FEATURED AT $779
(after $280 instant savings)
Limited Time System Offer
*compared to the Dell Vostro 1310 laptop
DELL    SMALL BUSINESS    CUSTOMIZE IT

| | |
|---|---|
| Global ID | **48243** |
| suspensions | report |
| sex | male |
| birth date | 1982-11-16 |
| age | 25 |
| manager/agent | register |
| division | flyweight |
| rating | 1 / 605 |
| nationality | Philippines |
| alias | The Filipino Flash |
| residence | San Leandro, California, United States |
| birth place | Talibon, Bohol, Philippines |
| stance | orthodox |
| height | 5' 6" |
| reach | 68" |
| US ID | CA059446 |

won **19** (KO 12) + lost **1** (KO 0) + drawn **0** = **20**

biography

## schedule

| date | opponent | W - L - D | last 6 | location | tickets |
|---|---|---|---|---|---|
| 2008-07-26 | ? | | | MGM Grand, Las Vegas, Nevada, United States | 12 |

~ IBF flyweight title ~
~ bout subject to commission approval / change ~

## bouts

Lb ● St ○ Kg ○  date ⊙ ● ⊙ ○  print 🖨

| | date | Lb | opponent | Lb | W-L-D | last 6 | location | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ❷ | 2007-12-01 | 111 | Luis Maldonado | 111 | 37-1-1 | □□□□□ | Foxwoods Casino, Mashantucket, Connecticut, United States | W | TKO | 8 12 |

~ time: 1:16 | referee: Charles Dwyer | judge: Clark Sammartino | judge: George Smith | judge: Don Trella ~
~ IBF flyweight title ~
~ IBO flyweight title ~

| | date | Lb | opponent | Lb | W-L-D | last 6 | location | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ❷ | 2007-07-07 | 112 | Vic Darchinyan | 112 | 28-0-0 | □□□□□ | Harbour Yard Arena, Bridgeport, Connecticut, United States | W | TKO | 5 12 |

~ time: 1:38 | referee: Eddie Claudio | judge: Steve Epstein 40-36 | judge: John McKaie 38-38 | judge: Don Trella 38-38 ~
~ IBF flyweight title ~
~ IBO flyweight title ~

| ✓ | 2007-05-12 | 115 | Kevin Hudgins | 116 | 5-9-0 | ▭▭▭▭▭ | Reno Events Center, Reno, Nevada, United States | W | TKO | 1 | 8 | 🥊 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

~ time: 2:29 | referee: Jay Nady ~

| ✓ | 2006-10-07 | 115 | Oscar Andrade | 115 | 35-27-1 | ▭▭▭▭▭ | Mandalay Bay Resort & Casino, Las Vegas, Nevada, United States | W | UD | 12 | 12 | 🥊 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

~ referee: Robert Byrd | judge: Robert Hoyle 118-109 | judge: Duane Ford 116-111 | judge: David Sutherland 116-111 ~
~ NABF super flyweight title ~

| ✓ | 2006-07-29 | 113¾ | Jose Luis Cardenas | 114 | 5-6-1 | ▭▭▭▭▭ | Chumash Casino, Santa Ynez, California, United States | W | TKO | 2 | 8 | 🥊 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

~ time: 1:48 | referee: Raul Calz ~

| ✓ | 2006-01-20 | 114 | Kahren Harutyunyan | 113¾ | 13-2-3 | ▭▭▭▭▭ | Pechanga Resort & Casino, Temecula, California, United States | W | SD | 10 | 10 | 🥊 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

~ referee: Tony Crebs | judge: Jose Cobian 97-92 | judge: David Denkin 97-92 | judge: Tony Castellano 94-95 ~
~ vacant NABF super flyweight title ~
Harutyunyan down in the 2nd rd.

| ✓ | 2005-11-05 | 116 | Ilido Julio | 119 | 35-6-1 | ▭▭▭▭▭ | Caesars Tahoe, Stateline, Nevada, United States | W | UD | 8 | 8 | 📖 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

~ referee: Robert Byrd | judge: Duane Ford 79-70 | judge: Dave Moretti 79-70 | judge: John McSweeny 79-70 ~

| ✓ | 2005-10-01 | 118 | Daniel Gonzalez | 117 | 4-1-0 | ▭▭▭▭▭ | Events Center, Reno, Nevada, United States | W | KO | 1 | 8 | 🥊 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

~ time: 2:19 | referee: Victor Alegria ~

| ✓ | 2005-07-02 | 117 | Larry Olvera | 119 | 5-4-2 | ▭▭▭▭▭ | Events Center, Reno, Nevada, United States | W | UD | 6 | 6 | 🥊 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

~ referee: Norm Budden | judge: John McSweeny 60-52 | judge: Herb Santos 59-53 | judge: Doug Tucker 59-53 ~

| ✓ | 2005-05-13 | 119¾ | Paulino Villalobos | 121 | 24-28-2 | ▭▭▭▭▭ | Civic Arena, San Jose, California, United States | W | TKO | 6 | 8 | 📖 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

~ time: 3:00 | referee: Marcos Rosales ~

| ✓ | 2004-11-12 | 118 | Gilberto Bolanos | 118 | 8-6-1 | ▭▭▭▭▭ | Quiet Cannon, Montebello, California, United States | W | UD | 8 | 8 | 🥊 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

~ 80-70 | 79-71 | 78-71 ~

| ✓ | 2004-06-18 | 118 | Ricardo Barrera | 119 | 16-4-1 | ▭▭▭▭▭ | Quiet Cannon, Montebello, California, United States | W | TKO | 4 | 6 | 🥊 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

~ time: 3:00 | referee: Jerry Cantu | judge: Gwen Adair | judge: Raul Calz | judge: Vince Delgado ~

| ✓ | 2003-06-27 | 115 | Jorge Lopez | 117 | 2-6-1 | ▭▭▭▭▭ | Mare Island Sports Center, Vallejo, California, United States | W | TKO | 1 | 8 | 🥊 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

~ time: 1:43 ~

| ❓ | 2002-11-02 | | Mark Sales | | 6-14-2 | ▭▭▭▭▭ | Joe Cantada Boxing Arena, Taguig, Philippines | W | UD | 8 | 8 | 🥊 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

| ❓ | 2002-09-01 | | Kaichon Sor Vorapin | | 4-5-0 | ▭▭▭▭▭ | University of Guam, Agana, Guam | W | KO | 2 | 12 | 🥊 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

~ referee: Bruce McTavish ~
~ vacant WBO Asia Pacific flyweight title ~
Donaire's fierce combination in the 2nd round sent Vorapin flat on the canvas.

| ❓ | 2002-05-31 | | Noel Alma | | 0-0-0 | | Elorde Sports Complex, Paranaque City, Manila, Philippines | W | KO | 1 | 0 | 🥊 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

| ✓ | 2001-07-03 | 114 | Jose Luis Torres | 116 | 0-4-0 | ▭▭▭▭ | Hyatt Regency Hotel, Monterey, California, United States | W | TKO | 1 | 4 | 🥊 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

~ time: 0:30 ~

| ✓ | 2001-06-08 | 113¾ | Saul Santoyo | 113 | 0-0-0 | | Hollywood Park Casino, Inglewood, California, United States | W | UD | 4 | 4 | 🥊 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

~ 40-34 | 40-34 | 40-34 ~
Pro debut for Santoya

| ✓ | 2001-03-10 | 115 | Rosendo Sanchez | 117½ | 2-1-0 | | Pacific Sports Center, Vallejo, California, United States | L | UD | 5 | 5 | 🥊 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

| ✓ | 2001-02-22 | 115¼ | Jose Lazaro | 117¼ | 1-3-1 | ▭▭▭▭ | Hollywood Park Casino, Inglewood, California, United States | W | KO | 1 | 4 | 🥊 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

~ time: 1:46 ~





- this data may be incomplete and/or inaccurate -
© BoxRec - 0.3343

# **EXHIBIT B**

05/11/2007 12:40 FAX                    FED EX KINKO'S                              ☒002/017

May 09 07 12:55p    GSPPRODUCTIONS                    9739041250                    p.1

## EXCLUSIVE PROMOTIONAL AGREEMENT

AGREEMENT dated this 9th day of May, 2007 between Gary Shaw Productions, an LLC with offices at 555 Preakness Avenue, Totowa, New Jersey 07512, (hereinafter called "PROMOTER") and Nonito Donaire, of 15967 East 14th Street, San Leandro, CA 94578, (hereinafter called "FIGHTER").

WHEREAS, FIGHTER wishes to obtain certain promotional services and commitments of PROMOTER to further FIGHTER's career as a professional boxer, and PROMOTER is willing and able to provide the promotion of or arrange for the staging of Bouts (as defined below) for FIGHTER under the terms and conditions set forth below.

NOW, THEREFORE, in consideration of the mutual promises set forth herein, the parties agree as follows:

1.    FIGHTER hereby grants to PROMOTER the exclusive right to promote and/or arrange for professional boxing contests (individually a "Bout" and collectively "Bouts") to be engaged in by FIGHTER during the term of this Agreement, including extensions thereof. PROMOTER or its designees shall promote or arrange for the staging of such Bouts subject to the terms and conditions set forth herein. Such exclusive promotion rights shall include, without limitation, (a) all rights required to stage and sell tickets of admission to all such Bouts, and (b) the ancillary rights thereto, including, without limitation, all exclusive worldwide rights to, without limitation, broadcast, telecast, record, film and transmit electronically such Bouts for exhibition in all media in perpetuity and all merchandising rights related to such Bouts.

2.    (a)    This Agreement shall be effective and binding as of the date hereof and the term shall continue (except as provided elsewhere in this Agreement) until the Third anniversary of the date of the first Bout hereunder. All references herein to "term" of the Agreement shall be deemed to include any extensions hereof.

ND

p.3    1-702-202-2095    Cameron Dunkin    May 11 07 11:62a

p.1    1-702-202-2095    Cameron Dunkin    Feb 21 08 11:48a

(b)    The initial term of this Agreement, and the term of any extensions hereof, shall be automatically extended for the entire period that FIGHTER is injured, under suspension of any kind, or is otherwise unable, unwilling or refuses to compete, or train to compete, in a Bout for any reason whatsoever. In the event that FIGHTER temporarily retires, at PROMOTER's sole election this Agreement may be suspended during the period of FIGHTER's temporary retirement, if any, but shall become fully operative if and when FIGHTER resumes his professional boxing career and the term hereof shall be extended by the length of time of such suspension of the Agreement.

(c)    In the event that FIGHTER participates in a Bout while this Agreement is in full force and effect, regardless of when such Bout takes place and he is declared the World Champion in any weight class of any or all of the WBA, WBC, IBF, WBO or other recognized sanctioning or rating organization as a result of his participation in such Bout, then the term of this Agreement shall be extended to include the entire period of time that FIGHTER defends his title five (5) times or three (3) years whichever is longer.

(d)    If FIGHTER is ranked as the number one or mandatory challenger in any weight class, of the WBA, WBC, WBO, IBF or other recognized sanctioning or rating organization at any time while this Agreement is in full force and effect, then this Agreement shall be extended for the entire period or period that FIGHTER remains the number one ranked or mandatory challenger.

3.    PROMOTER will use commercially reasonable efforts to promote and/or arrange for the staging of, and FIGHTER shall engage in, a reasonable number of Bouts for FIGHTER, commensurate with FIGHTER's level of ability, record and ranking in the boxing industry and has television marketability. Notwithstanding the foregoing, PROMOTER agrees to promote, or arrange for the staging of, a minimum of four (4) Bouts (including the first Bout) during the 12 months following the first Bout hereunder (the "First Contract Year"), four (4) Bouts during the 12 months following the expiration of the First Contract Year (the "Second Contract Year") and four (4) Bouts during the 12

2

months following the expiration of the Second Contract Year (the "Third Contract Year") and four (4) Bouts during the 12 months following the expiration of the Third contract Year (the "Fourth Contract Year"), four (4) Bouts during the 12 months following the expiration of the Fourth Contract Year (the "Fifth Contract Year") provided, however, that PROMOTER shall be obligated to promote, or arrange for the staging of a minimum of only two (2) Bouts in any 12 month period during which FIGHTER is at any time either the World Champion or number one challenger or mandatory challenger, in any weight class, of any or all of the WBA, WBC, IBF, WBO or other recognized sanctioning or rating organization. PROMOTER shall be deemed to have complied with its obligations with respect to any Bout if it shall have made a *bona fide* offer (which shall include information relating to purse amount, date, opponent and site) to FIGHTER to promote a Bout in accordance with the provisions such Bout takes place for any reason other than PROMOTER's nonperformance. If such Bout is an undercard to a main event and that main event is canceled or postponed for any reason whatsoever, the failure of such Bout to take place shall not be deemed nonperformance by PROMOTER.

    4.  (a)    For all Bouts hereunder, PROMOTER and FIGHTER shall negotiate each purse in good faith, and be determined by mutual agreement between FIGHTER and PROMOTER. However, the minimum purse for such Bouts shall be not less than as follows:

        8 rounds – not less than $ 5,000.00

        10/12 rounds – not less than $ 7,500.00

*Bouts on television networks other than HBO or Showtime (including Bouts on ShoBox):*
10-round/12-round co-feature Bouts:  not less than $ 7,500.00
10-round/12-round main event Bouts:  not less than $ 10,000.00

*Bouts on Showtime (not including ShoBox):*
Co-feature Bouts:  not less than $ 25,000.00
Main Event Bouts: Challenger not less than $ 35,000.00

ND

3

05/11/2007 12:40 FAX            FED EX KINKO'S        9739041250        04

May 09 07 12:56p    GSPPRODUCTIONS                        9739041250        04

*Bouts on HBO "Boxing After Dark:"*

Co-feature Bouts: not less than $ 30,000.00

Main Event Bouts: not less than $ 75,000.00

*Bouts on HBO "World Championship Boxing:"*

Co-feature Bouts: not less than $ 40,000.00

Main Event Bouts: not less than $ 100,000.00

(b)  Notwithstanding the foregoing relating to each of the contract years, PROMOTER reserves the right to offer Bouts to FIGHTER with purses below this purse scale provided such Bouts are offered for increased activity, and are above and beyond the minimum number of Bouts set forth in Section 3 above.

(c)  If at any time during the period that this Agreement is in full force and effect, FIGHTER engages in a World Championship Bout (sanctioned by any or all of the WBC, WBA, WBO or IBF) in any weight class: (i) as a challenger, the purse for such Bout shall be negotiated in good faith but in no event shall be less than $35,000.

5.  In the event that PROMOTER shall fail, for any reason other than injury or the physical disability of FIGHTER or a Bout opponent as provided in Section 8 of this Agreement, to provide the minimum number of Bouts for any contract year, PROMOTER may cure such breach by providing compensation to FIGHTER equal to $2,000 per Bout up to 10 Rounds and $5,000 for any 10 Round for which PROMOTER did not provide or for which a *bona fide* offer was not made. Such compensation shall be paid within 30 days of the end of the applicable contract year.

6.  For each Bout hereunder, PROMOTER shall provide, at no cost to FIGHTER, round-trip transportation and lodging from FIGHTER's home city to the site of the Bout as follows:

HOTEL ROOMS:    PROMOTER shall provide FIGHTER with four (4) rooms for all Bouts; provided that if FIGHTER is participating in a Bout for a World

ND

4

Championship sanctioned by the WBA, WBC, IBF or WBO, then PROMOTER shall provide FIGHTER with 5 hotel rooms, 1 of which shall be a suite if available.

AIRLINE TICKETS: PROMOTER shall provide FIGHTER with up to four (4) round-trip coach tickets for all Bouts; provided that if FIGHTER is participating in a Bout for a World Championship sanctioned by the WBA, WBC, IBF or WBO, PROMOTER shall provide FIGHTER with up to five (5) round-trip tickets – one (1) first-class and four (4) coach. First Class Tickets will only be issued for domestic flights within the mainland USA.

BOUT TICKETS: For any Bout that said fighter is engaged in he shall receive 6 (six) tickets if GSP solely promotes the entire event. For any Bout that the fighter is in the main event, PROMOTER shall provide FIGHTER with 4 (four) tickets in the first price category and 2 (two) tickets in the second price category; provided that if FIGHTER is participating in any World Championship Bout sanctioned by the WBA, WBC, IBF or WBO, PROMOTER shall provide FIGHTER with 4 (four) tickets within the first three (3) rows and four other tickets.

7.  (a)  PROMOTER shall select the date and site for each Bout.

(b)  The opponent for each Bout hereunder shall be mutually agreed upon by PROMOTER and FIGHTER. FIGHTER's approval of opponents shall not be unreasonably withheld. Notwithstanding the foregoing, in the event the opponent for any Bout is mandated by any sanctioning body or any other applicable ratings organization, FIGHTER shall not have the right to disapprove of any such opponent. If FIGHTER insists upon a fight that PROMOTER does not agree with, then no minimums shall apply.

8.  (a)  In the event that FIGHTER shall become permanently or partially disabled during the term of this Agreement, PROMOTER shall have the right, but not the obligation, to terminate this Agreement, without further liability or obligation to FIGHTER.

(b)  Should this Agreement be extended for any reason pursuant to Section 2(b), the obligation of FIGHTER and PROMOTER relating to the minimum

5

Bouts for the period within which such extension(s) occur(s) shall be eliminated for the period of such extension.

9.    If a purse bid is forced at any time during the term of this Agreement, PROMOTER agrees to use its best commercially reasonable efforts to win such purse bid.  In the event that PROMOTER fails to win the purse bid, FIGHTER shall be allowed to participate in the purse bid Bout, provided, however, that in consideration for PROMOTER allowing FIGHTER to participate in such purse bid Bout and for using its best efforts to win the purse bid, which is likely to cause an increase in the winning purse bid, FIGHTER agrees to assign and pay over to PROMOTER twenty-five percent (25%) of the amount he is to receive up to $2,000,000 and thereafter twenty percent (20%).  FIGHTER agrees to take all necessary action to arrange for PROMOTER to be paid directly such amount simultaneously with the payment of such purse bid amount.  Any purse bid Bout in which the FIGHTER is allowed to participate shall constitute one of the minimum numbers of Bouts referred to in Section 3.

10.    FIGHTER grants to PROMOTER the exclusive worldwide rights to each event promoted under the terms of this Agreement, in perpetuity, including the unrestricted right to telecast, photograph, record, electronically transmit or otherwise reproduce the event and the events immediately preceding and following the Bout and between the rounds in any and all media in or by any manner, method or devise (now know or hereafter devised), including, without limiting the generality of the foregoing, the unlimited and unrestricted right to telecast the Bout by means of live or closed circuit television, paid, subscription or toll television, films, tapes, electronic transmission on the Internet, broadband, video-on-demand, or otherwise, for exhibition in all media and in all languages, whether for theatrical exhibition or for sale, lease or license or home use, including audio and audio-visual cassettes, "EVR," holograms and the unlimited right to deal with any or all the foregoing, and all other rights, privileges, benefits, matters and things incident to or arising out of all or any of the foregoing.

ND

6

11.    PROMOTER and its licensees shall have the right and may grant to others the right to reproduce, print, publish, electronically transmit or disseminate in any medium the name, portrait, likeness, voice and biographical material concerning the FIGHTER for the purpose of advertising and/or promoting and/or exploiting the Bouts, including on a World Wide Web site or by any other means via the Internet, souvenir programs, fight programs, posters, banners, buttons, tee-shirts, hats, coins and other souvenir products. In addition, PROMOTER and its licensees shall have the right to reproduce, print, publish, electronically transmit or disseminate in any media the name, portrait, likeness, voice and biographical material of the FIGHTER as news or information and for PROMOTER's own promotional purposes. The rights granted in this Section shall include the right to shoot videotaped footage of FIGHTER training for Bouts and to televise or disseminate same to the media.

12.    PROMOTER shall have the right to assign, lease or transfer any or all of the rights granted to it herein to any person, firm or corporation for the sole purpose of a specific promotion, but will be responsible to FIGHTER for fulfilling all terms herein. Any assignment by PROMOTER of its entire rights for all Bouts hereunder shall require written approval from FIGHTER, which shall not be unreasonably withheld; provided, however, that consent is hereby given and deemed given to any such assignment to an entity in which Gary Shaw is the President or Chief Executive Officer or in which Gary Shaw jointly or singly, have at least a fifty percent (50%) beneficial ownership interest. The obligations of FIGHTER hereunder are personal to FIGHTER, and neither the benefits nor the duties of FIGHTER hereunder may be assigned, pledged or transferred for any reason.

13.    FIGHTER agrees to execute and comply with the standard boxing contracts for each Bout on the forms required by the applicable athletic commission and any and all other documents reasonably required in connection with the exercise of the rights granted to PROMOTER hereunder and which are consistent with this Agreement.

ND

7

14.    (a)    FIGHTER hereby acknowledges and agrees that the services to be rendered or furnished by him hereunder and the rights granted to PROMOTER by this Agreement are of a special, unique, unusual and extraordinary character, giving them peculiar value, the loss of which would cause irreparable damage or injury that cannot not be reasonably or adequately compensated by damages in an action at law. Any equitable relief sought or obtained by PROMOTER shall be in additional to and without prejudice to any other rights or remedies which PROMOTER may have.

(b)    In addition, FIGHTER hereby expressly agrees that, during the term of this Agreement as well as during the Exclusive Negotiation Period provided for in Section 20 below, he will not enter into discussions or negotiations with any other person or entity relating directly or indirectly to such person or entity providing FIGHTER, with any or all of the services provided to FIGHTER by PROMOTER pursuant to this Agreement. FIGHTER further expressly agrees that, during the term of this Agreement as well as during the Exclusive Negotiations Period provided for in Section 20 below, he will not participate in any Bout for another promoter or any other individual or entity, and unconditionally covenants not to oppose any request by PROMOTER for injunctive relief preventing FIGHTER from fighting for another promoter, individual or entity during the term of this Agreement as well as during the Exclusive Negotiation Period provided for in Section 20 below on the ground that Promoter has an adequate remedy at law. The provisions of this Section 19 (b) shall be equally applicable during the ROFR (as defined in Section 21 below) so long as PROMOTER retains rights to match an offer pursuant to Section 21 below.

ND

15.    FIGHTER represents, warrants and agrees that he is/free to enter into this Agreement, and has not heretofore entered into and will not into any other agreement or any other athletic contest without the approval of PROMOTER and that there is, in fact, no contract or agreement in existence that conflicts with the provisions hereof or which grants any similar or conflicting right which would or might interfere with the FIGHTER's full and complete performance by the FIGHTER of the obligations hereunder or the free, unimpaired exercise by PROMOTER of any of the rights herein

8

granted to it. FIGHTER acknowledges that PROMOTER is entering into this Agreement in reliance upon the foregoing warranties, representations, and covenants, and FIGHTER agrees to indemnify and hold harmless PROMOTER from and against any and all liabilities, obligations, damages, penalties, claims, actions, suits, costs and expenses ( including, without limitation, attorney's fees) of any kind and nature which are imposed upon or incurred by PROMOTER relating to or arising out of any breach of the above representations or warranties.

16. Nothing in this Agreement shall be construed as creating an employer/employee relationship of any kind between PROMOTER and FIGHTER, or as appointing PROMOTER as FIGHTER's agent. It is intended that FIGHTER shall remain an independent contractor, responsible for his own actions and expenses, including trainers, manager, sparring partners, training facility, equipment and professional membership and sanctioning fees. FIGHTER shall select his own managers and trainers. FIGHTER shall be exclusively liable for any payments due to his manager, trainers, and other support personnel. FIGHTER explicitly acknowledges that nothing in this Agreement creates a fiduciary obligation to FIGHTER by PROMOTER.

17. PROMOTER shall have the right at its election to obtain life or other insurance upon FIGHTER in such amounts as PROMOTER may determine at its own cost and expense, including, but not limited to, insurance against the failure of FIGHTER to appear and to participate in any Bout promoted pursuant to the terms of this Agreement. FIGHTER shall have no right, title, or interest in such insurance. FIGHTER fully agrees to cooperate and assist PROMOTER in obtaining such insurance including submitting to such physical or other examinations of FIGHTER as may be required to obtain such insurance. The results of any such physical examinations shall be kept strictly confidential.

18. Except as otherwise provided herein, there shall be no third party beneficiaries to this contract.

19. In the event the FIGHTER loses any of the Bouts promoted pursuant to this Agreement, PROMOTER shall, in addition to the rights provided by Sections 20 and 21 below, have all of the following options, none of which shall be exclusive:

(a) PROMOTER shall have the option of renegotiating the compensation terms of this Agreement. In such event, PROMOTER shall provide FIGHTER with written notice within twenty (20) days of said loss that PROMOTER is exercising its renegotiation option. PROMOTER and FIGHTER shall then have twenty (20) days (the "Renegotiation Period") from the date FIGHTER receives PROMOTER's notice to renegotiate but no longer than a total of forty (40) days from date of loss, in good faith, the compensation terms of this Agreement. In the event PROMOTER and FIGHTER are unable to reach mutually agreeable terms within such time, PROMOTER shall then have the option of terminating this Agreement as set forth in Section 19 (b) below.

(b) PROMOTER shall have the option of terminating this Agreement by furnishing FIGHTER with written ("Termination Notice") no later than thirty (30) days following the date of said loss, or following the expiration of the Renegotiation Period in the event that PROMOTER elected to exercise the renegotiation option.

20. Upon the expiration of the Agreement or in the event that PROMOTER exercises the option to terminate this Agreement as set forth in Section 19(b), FIGHTER grants PROMOTER an optional right of exclusive negotiation for thirty days (30) days after the date of expiration or termination (the "Exclusive Negotiation Period") during which time the parties shall attempt to agree on terms of a new contract. PROMOTER may, but is not obligated to, exercise such option. PROMOTER shall indicate whether it has elected to exercise the option for an Exclusive Negotiation Period

ND

10

in its Termination Notice to FIGHTER or by sending written notice to FIGHTER no later than thirty (30) days prior to expiration of the Agreement.

      21. (a) PROMOTER shall have a right of first and last refusal ("ROFR") in regard to entering into a promotional agreement with FIGHTER for the duration of the ROFR Period, as defined below. In the event that FIGHTER receives a bona fide third party offer for FIGHTER's services during the ROFR, FIGHTER shall forward written notice of same to PROMOTER, which shall include all relevant terms of the offer. PROMOTER shall have ten (10) days from receipt of such written notice to match said offer by sending written notice to such effect to FIGHTER. In the event that PROMOTER chooses to match such offer, PROMOTER and FIGHTER shall promptly enter into an agreement on the same material terms and conditions as embodied in the third party offer to FIGHTER. If PROMOTER chooses not to match the offer, FIGHTER shall have the right to enter into an agreement with the third party on the terms and conditions set forth in the notice to PROMOTER. Any alterations to the terms of the third party offer, or any subsequent bona fide third party offers in the event that a given offer not matched by PROMOTER is not consummated with the offeror, shall be forwarded to PROMOTER pursuant to the terms herein.

      (b) For purposes of this Section, the "ROFR Period" shall mean (i) thirty (30) days beginning on the last day that this Agreement is in full force and effect or (ii) in the event the Exclusive Negotiation Period option is exercised by PROMOTER, a period of one year from the conclusion of the Exclusive Negotiation Period.

      (c) PROMOTER may satisfy its obligation to match an offer from a third party, as referred to in Section 21 (a) above, by copying the material terms of the third party offer or by making another offer which would provide the FIGHTER with the same total amount of purses as contained in the third party offer. If the PROMOTER determines to copy the material terms of the third party offer, it shall have the right to select different locations and dates for Bouts so long as the location and opponents are comparable and the dates at issue are within three months of the dates described in the third party offer.

11

22.  FIGHTER agrees to wear logos of Gary Shaw Productions and also agrees that no working, symbol, picture, design, name (except his own) or other advertising or informational material shall appear on the trunks, robe, shoes or other clothing worn by FIGHTER, his trainers, seconds or assistants during any Bouts hereunder, without prior approval of PROMOTER, such approval not to be unreasonably withheld.  FIGHTER agrees that no wording, symbols, pictures, designs, name or other advertising or international material relating to any gaming or sports betting entities shall appear on any body part of FIGHTER or his trainers, seconds or assistants during and/or at the BOUT without the prior approval of PROMOTER, such approval to be at PROMOTER's sole discretion.

23.  The laws of the State of New York applicable to contracts executed and to be fully performed in the State of New York shall govern this Agreement without regard to principles of conflict or choice of laws.  The parties hereto irrevocably consent to the personal jurisdiction of the Courts of the State of New York.  The parties further agree to the exclusive jurisdiction of the federal and state courts located in New York County, New York, and that service of any process either by certified mail (return receipt requested) or by Federal Express to a party's address as listed in Section 25 below, will be deemed to constitute good and sufficient service.

ND

24.  FIGHTER acknowledges that he will participate in each Bout promoted hereunder to the best of FIGHTER's ability, that FIGHTER shall prepare and honestly compete by exercising FIGHTER's maximum skill, and that there is no impairment to FIGHTER doing so.  In the event that any impediment to FIGHTER's performance should arise, FIGHTER shall immediately notify PROMOTER.  Without limiting any of PROMOTER's rights or remedies under law or equity, if PROMOTER believes in its good faith judgment, based upon demonstrable facts, that FIGHTER cannot give, will not give, or has not given an honest exhibition of FIGHTER's maximum skills, PROMOTER may terminate this Agreement.

12

25. All notices, elections, payments or other communications to be sent to the parties hereto shall be addressed and sent by certified or registered mail (return receipt requested and postage prepaid) or by confirmed fax as follows:

WITH COPY TO:

Nonito Donaire

PROMOTERS:

Gary Shaw Productions, LLC
555 Preakness Avenue
Totowa, New Jersey 07512
Fax (973) 904-1250

WITH COPY TO:

Judd Burstein, Esq.
1790 Broadway, Suit 1501
New York, NY 10019.
Fax: 212-974-2944.

ADDITIONAL COPY:

Cameron Duncan

26. Nothing herein shall prevent PROMOTER from engaging in promotional activities for any other fighter, including other fighters in the same weight class as FIGHTER, and PROMOTERS shall have not duty or obligation to direct or arrange any particular Bout for FIGHTER as opposed to any other fighter.

27. Any breach of this Agreement by PROMOTER or FIGHTER, other than FIGHTER's breach of Sections 13, 14, 15, 19, 20 and 21 above shall be deemed waived by the other unless within ten (10) days after the respective party acquires notice of such breach, or of other facts sufficient to put him on notice of such breach, such party shall serve written notice upon the other of such breach.

ND

13

28. FIGHTER acknowledges that he has read and understands the provisions of this Agreement and that he has had the opportunity to have independent counsel or advisers (a) explain the implications of the commercial relationship between FIGHTER and PROMOTER and (b) answer any questions FIGHTER has or may have had with respect to the terms of this Agreement and the parties' respective rights and obligations. Based upon the foregoing, FIGHTER acknowledges that this Agreement is fair and reasonable, and that he believes it to be in his best interests to enter into this Agreement.

29. Upon execution of this Agreement, the parties expressly agree to and hereby waive and release each other, as well as their successors, assigns, officers, directors, employees and attorneys, from any claims or obligations, known, or unknown, asserted or unasserted, that either may have with respect to the other arising from the beginning of the world to the date of the execution of this Agreement.

30. Except as may be required by law, neither party shall disclose to anyone, other than a party's officers, directors, employees, attorneys, accountants, lenders, applicable governmental authorities or anyone else who requests information pursuant to compulsion by legal process, any information concerning the economic terms set forth in this Agreement.

31. This agreement sets forth the entire agreement among the parties and supercedes and replaces all prior and contemporaneous warranties, representations and agreements, whether written or oral, and whether made by the parties themselves or by their agents. There are no other agreements or promises made by the parties to each other apart from those contained in this Agreement. This Agreement may be modified only by a writing signed by all of the parties.

32. This agreement may be executed in multiple counterparts, each of which shall be deemed to be an original and all of which when taken together shall constitute one and the same agreement. Facsimile machine copies of this

ND

14

Agreement may be executed by the parties and shall be deemed as binding as if originals had been executed.

33. Even after the term of this Agreement, the provisions of this Agreement shall apply to any Bout in which the FIGHTER participates which was negotiated for or arranged by PROMOTER, either by itself or in conjunction with another promoter, regardless of when the Bout itself actually takes place. In addition the FIGHTER agrees that, in the event that the FIGHTER enters into or ratifies a multifight agreement with a broadcast network, including, but not limited to, HBO or Showtime or ESPN, the terms of this Agreement shall be extended, if necessary, so as to be coextensive with the terms of such multifight agreement. The PROMOTER GSP shall be included in any multi-fight agreement as a party to the agreement.

34. In the event that any aspect of this Agreement is deemed by a Court of competent jurisdiction to be invalid for any reason, this Agreement shall remain in full force and effect with the sole exception of the portion(s) deemed invalid. In addition, in the event that any Court finds a provision to be invalid, the parties will request the Court modify such provision so as to apply the terms of such provision to the maximum extent provided by law.

35. PROMOTER shall provide to FIGHTER all required disclosures by a promoter to a fighter as required by Section 13 of the Muhammad Ali Reform Act.

36. The parties agree that this Agreement shall not be deemed to have been drafted by any one party, and that no ambiguity in the Agreement should be construed as a matter of law for or against any party.

ND

15

**IN WITNESS WHEREOF**, the parties have executed this Agreement on the day and year first written above.

**GARY SHAW PRODUCTIONS LLC**

By: _____

Title: _____

Witness: _____

_____
**Nonito Donaire**

_____
**WITNESS**

_____
**Cameron Dunkin – Manager**

CAMERON DUNKIN - MANAGER

ND

16

# **EXHIBIT C**

# DINES AND ENGLISH, L.L.C.

### ATTORNEYS AT LAW
### 685 VAN HOUTEN AVENUE
### CLIFTON, NEW JERSEY 07013

973 - 778-7575
FACSIMILE
973 - 778-7633

PATRICK C. ENGLISH

AARON DINES
(1923-2002)

JASON M. SANTARCANGELO
ALSO ADMITTED IN N.Y.

May 30, 2008

### VIA FACSIMILE (973) 904-1250

Gary Shaw
Gary Shaw Productions, LLC
555 Preakness Avenue
Totowa, New Jersey 07512

Re: **Nonito Donaire**

Dear Mr. Shaw:

We have been contacted by the management of Nonito Donaire and have been asked to represent him. They have several issues they wish resolved.

Gary Shaw Productions, LLC "(GSP")" is required under the contract to provide Mr. Donaire with a minimum of two bouts per year from the time Mr. Donaire became a champion, which was July 7, 2007. In fact he was given one bout to date and, given the very little time between now and July 7, 2008 it is apparent that GSP will soon be in breach. They have informed me that they have no intention of waiving this requirement.

Separately, Mr. Donaire's management has informed me that there has been a serious breach of paragraph 35 of the contract and of the Muhammad Ali Act in that none of the disclosures required have _ever_ been made to Mr. Donaire or his management. As you have counsel, I need not remind you that, inter alia, GSP was not legally entitled to any compensation from any of Mr. Donaire's bouts unless that was provided. We request that they be provided to us immediately.

Finally, and penultimately, Mr. Donaire's management informs me that the contract in question was required by GSP in order for GSP to promote an IBF title bout against Vic Darchinyan, held on July 7, 2007.

DINES AND ENGLISH, L.L.C.

ATTORNEYS AT LAW

Gary Shaw
May 30, 2008
Page 2

I refer you to 15 USC §6307(b) which reads in pertinent part:

(1)     (A) A contract provision shall be considered to be in restraint of trade, contrary to public policy, and unenforceable against any boxer to the extent that it --

       (i) is a coercive provision described in subparagraph (B) and is for a period of greater than 12 months; or

       (ii) is a coercive provision described in subparagraph (B) and the other boxer under contract to the promoter came under that contract pursuant to a coercive provision described in subparagraph (B).

    (B)     A coercive provision described in this subparagraph is a contract provision that grants any rights between a boxer and a promoter, or between promoters with respect to a boxer, if the boxer is required to grant such rights, or a boxer's promoter is required to grant such rights with respect to a boxer to another promoter, as a condition precedent to the boxer's participation in a professional boxing match against another boxer who is under contract to the promoter.

Thus by the terms of the cited Federal Law (part of the Muhammad Ali Act) GSP could not request and can not enforce a contract for a period in excess of 12 months. Though the act is silent, this has customarily been interpreted to mean 12 months past the date of the title bout in question. This means that the contract is unenforceable and illegal subsequent to July 7, 2008.

To summarize:

1)     GSP owes Mr. Donaire a bout by July 7, 2008. Kindly advise immediately how GSP is going to provide this.

2)     GSP owes, long since, Muhammad Ali Act disclosures for Mr. Donaire's last two bouts.

DINES AND ENGLISH, L.L.C.

ATTORNEYS AT LAW

Gary Shaw
May 30, 2008
Page 3

    3)    The contract in question is illegal to the extent that it exceeds 12 months from the date on which Mr. Donaire won the title, and will, as a matter of Federal Law, be deemed non enforceable and void after that point in time.

    Please advise your position regarding these matters.

    I see that the contract provides that Mr. Burstein is to be copied.  However, when Mr. Dunkin attempted previously to copy him Mr. Burstein indicated that he no longer represented you.  I will copy anyone you may wish.

        Very truly yours,

        DINES AND ENGLISH, L.L.C.

BY: _____
        PATRICK C. ENGLISH

/mat
C:  Scott Shaffer, Esq.
    Cameron Dunkin
    Michael Miller, Esq.
    Nonito Donaire

# EXHIBIT D

# DINES AND ENGLISH, L.L.C.

### ATTORNEYS AT LAW
685 VAN HOUTEN AVENUE
CLIFTON, NEW JERSEY 07013

973 - 778-7575
FACSIMILE
973 - 778-7633

PATRICK C. ENGLISH

AARON DINES
(1923-2002)

JASON M. SANTARCANGELO
ALSO ADMITTED IN N.Y.

June 6, 2008

## VIA FACIMILE (212) 683-9181

Scott Shaffer, Esq.
Lustigman Firm, PC
149 Madison Avenue/Ste. 805
New York, NY 10116

Re: **Nonito Donaire**

Dear Mr. Shaffer:

Reference is made to my letter of May 30, 2008 to Mr. Shaw and copied to you.

I recognize that Mr. Shaw was involved in a major promotion last weekend and did not anticipate an immediate response. However, a full week has now gone by and I have called you with several polite reminders this week.

Neglect, be it benign or otherwise on the part of your client, will not suffice. We are entitled to a response and at this point we respectfully but firmly state that we anticipate one will be forthcoming immediately.

Very truly yours,

DINES AND ENGLISH, L.L.C.

BY:

PATRICK C. ENGLISH

/mat
c: Michael Miller

# EXHIBIT E

## DINES AND ENGLISH, L.L.C.

ATTORNEYS AT LAW

685 VAN HOUTEN AVENUE

CLIFTON, NEW JERSEY 07013

———

973 - 778-7575

FACSIMILE

973 - 778-7633

PATRICK C. ENGLISH

———
AARON DINES
(1923-2002)

JASON M. SANTARCANGELO
ALSO ADMITTED IN N.Y.

June 9, 2008

### VIA FACIMILE (212) 683-9181

Scott Shaffer, Esq.
Lustigman Firm, PC
149 Madison Avenue/Ste. 805
New York, NY 10116

Re: **Nonito Donaire**

Dear Mr. Shaffer:

Apparently your client has left you out to dry.

After our exchange of letters on Friday in which I emphasized the need for a quick response, it is now well after the close of business on Monday and I still have heard nothing from you. Knowing your responsiveness I can only conclude that your client has not given you any information with which to respond. He did, however call Mr. Dunkin on Saturday and as relayed to me engaged in "small talk," without rancor but without resolution.

Given the seriousness of the allegations, including but not limited to the Muhammad Ali Act violations, one would have thought Mr. Shaw would want to resolve this. Instead, he has done essentially nothing.

We will be guided accordingly.

Very truly yours,

DINES AND ENGLISH, L.L.C.

BY:

PATRICK C. ENGLISH

/mat
C: Nonito Donaire
Cameron Dunkin
Michael Miller, Esq.

# **EXHIBIT F**

### DINES AND ENGLISH, L.L.C.

ATTORNEYS AT LAW

685 VAN HOUTEN AVENUE

CLIFTON, NEW JERSEY 07013

973 - 778-7575

FACSIMILE

973 - 778-7633

PATRICK C. ENGLISH

AARON DINES
(1923-2002)

JASON M. SANTARCANGELO
ALSO ADMITTED IN N.Y.

June 12, 2008

### VIA FACSIMILE (973) 904-1250

Gary Shaw
Gary Shaw Productions, LLC
555 Preakness Avenue
Totowa, New Jersey 07512

Re:  **Nonito Donaire**

Dear Mr. Shaw:

I am writing pursuant to paragraph 25 of a certain contract entered into between Nonito Donaire and Gary Shaw Productions, LLC

I first wrote to you on May 30, 2008 and since that time I have had a series of correspondences with your counsel. In short, we have received no response to our letters and inquiries.

Please be further advised that it is clear that Gary Shaw Productions, LLC is in anticipatory breach of that portion of the contract which is valid, to wit providing a bout to Mr. Donaire by July 7. It is also in breach of the Muhammad Ali Act with regards to past bouts promoted by Gary Shaw Productions due to failure to provide Muhammad Ali statements.

As you know from prior correspondence, the contract is invalid as to any portion which extends past July 7 by virtue of the Muhammad Ali Act.

My client has suffered substantial damages for the breach. I have advised him that he should take any action available to mitigate those damages. This mitigation, if any is available, will be with a full reservation of rights.

**DINES AND ENGLISH, L.L.C.**

ATTORNEYS AT LAW

Gary Shaw
June 12, 2008
Page 2


   This letter is not intended to be a full exposition of facts and legal positions and all rights are reserved.


        Very truly yours,

        **DINES AND ENGLISH, L.L.C.**

   BY:                 
        PATRICK C. ENGLISH

/mat
C: Scott Shaffer, Esq.
  Cameron Dunkin
  Michael Miller, Esq.
  Nonito Donaire

# **<u>EXHIBIT G</u>**

**THE LUSTIGMAN FIRM, P.C.**
ATTORNEYS
149 MADISON AVENUE
SUITE 805
NEW YORK, NY 10016-6713
TEL:(212) 683-9180 – FAX: (212) 683-9181
www.lustigmanfirm.com

SHELDON S. LUSTIGMAN                                                     ADMITTED NY & NJ
ANDREW B. LUSTIGMAN
SCOTT A. SHAFFER

June 27, 2008

**VIA E-MAIL**
Michael Heitner, Esq.
Herrick, Feinstein LLP
2 Park Avenue
New York, NY 10016

Re:  **Nonito Donaire**

Dear Michael:

Gary Shaw and Bob Arum just spoke briefly via telephone about Nonito Donaire. Top Rank has just announced that it had signed Mr. Donaire to a promotional contract despite its knowledge that a promotional contract exists between Mr. Donaire and Gary Shaw Productions ("GSP"). During the telephone call, Bob asked that a copy of the promotional contract be forwarded to your attention, so I am attaching a copy of the Donaire-GSP contract for your review. I ask that you share it only with your client and no outside parties.

My client has authorized me to file suit in this matter, including against Top Rank for tortious interference with contract. It is our hope that such action will not be necessary with respect to Top Rank, but the decision rests with your client. After you have had a chance to review the matter, please call me to discuss or have Bob call Gary.

Sincerely yours,

Scott Shaffer

Encl.
cc: Gary Shaw

# **EXHIBIT H**

http://www.boxrec.com/list_bouts.php?human_id=62137&cat=boxer

# **BoxRec**

NEW **Samil Sam v Paulo Vidoz - Live**
NEW

English

**home** | **name** | **date** | **ratings** | **schedule** | **results** | **location** | **title** | **forum** | **encyclopaedia** | **contact** |
**boxer location** | **manager location** | **Register**

editors



## boxer: James Kirkland



### SHE MARRIED HIM??!!

THEY HAVE
**7**
KIDS?!!

**Find Your Old School Here**    classmates.com
| – City – | – State – | SEARCH ▸ |

| | |
|---|---|
| Global ID | **62137** |
| suspensions | report |
| sex | male |
| birth date | 1984-03-19 |
| age | 24 |
| manager/agent | register |
| division | light middleweight |
| rating | 9 / 1079 |
| nationality | United States |
| residence | Austin, Texas, United States |
| birth name | James Derick Kirkland |
| stance | southpaw |
| height | 5' 9" |
| reach | 70" |
| US ID | TX057847 |

**won 22 (KO 19) + lost 0 (KO 0) + drawn 0 = 22**

biography

## schedule

| date | opponent | W - L - D | last 6 | location | tickets |
|---|---|---|---|---|---|
| 2008-10-04 | ? | | | United States | 0 |

bout subject to commission approval / change

## bouts

Lb ⦿ St ○ Kg ○ date ⦿ ○ ○ print

| | date | Lb | opponent | Lb | W - L - D | last 6 | location | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ✓ | 2008-05-17 | 154 | Eromosele Albert | 152½ | 21-1-0 | ▯▯▯▯▯▯ | Buffalo Bill's Star Arena, Primm, Nevada, United States | W | TKO | 1 | 10 |

~ time: 1:06 | referee: Joe Cortez | judge: Richard Houck | judge: Jerry Roth | judge: Paul Smith ~
~ vacant WBO NABO light middleweight title ~

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ✓ | 2007-11-30 | 152 | Allen Conyers | 150¼ | 11-2-0 | ▯▯▯▯▯▯ | Chumash Casino, Santa Ynez, California, United States | W | TKO | 1 | 10 |

~ time: 2:56 | referee: Ray Corona | judge: Max DeLuca | judge: Marty Denkin | judge: Lou Filippo ~
Both boxers down once.

http://www.boxrec.com/list_bouts.php?human_id=62137&cat=boxer

| Date | | Opponent | | Record | | Venue | Result | | | | |
|------|------|----------|------|--------|------|-------|--------|---|---|---|---|
| 2007-09-01 | 154½ | Mohammad Said | 158 | 23-5-1 | | Emerald Queen Casino, Tacoma, Washington, United States | W | KO | 2 | 10 | |
| ~ time: 2:32 | referee: Robert Howard | judge: Robert Brenner | judge: Barry Druxman | judge: Glen Hamada ~ | | | | | | | |
| 2007-06-01 | 155¼ | Ossie Duran | 153½ | 23-5-1 | | Chumash Casino, Santa Ynez, California, United States | W | UD | 10 | 10 | |
| ~ referee: Raul Caiz Jr | judge: Gwen Adair 97-92 | judge: David Mendoza 95-94 | judge: Jack Reiss 97-92 ~ | | | | | | | | |
| 2007-02-02 | 155 | Billy Lyell | 155 | 14-3-0 | | Chumash Casino, Santa Ynez, California, United States | W | TKO | 8 | 10 | |
| ~ time: 0:34 | referee: Lou Moret | judge: Marty Denkin | judge: Ray Corona | judge: Lou Filippo ~ | | | | | | | |
| 2006-12-01 | 155 | David Toribio | 155 | 13-6-0 | | Chumash Casino, Santa Ynez, California, United States | W | KO | 4 | 8 | |
| ~ time: 1:35 | referee: Jerry Cantu ~ | | | | | | | | | | |
| 2006-10-06 | 154 | Sherwin Davis | 153½ | 18-3-0 | | Chumash Casino, Santa Ynez, California, United States | W | RTD | 2 | 8 | |
| ~ time: 3:00 | referee: Jack Reiss ~ Injury | | | | | | | | | | |
| 2006-07-28 | 154 | Alexis Divison | 155½ | 16-4-0 | | PFTC Sports Center, Las Vegas, Nevada, United States | W | RTD | 3 | 8 | |
| ~ time: 3:00 | referee: Tony Weeks ~ | | | | | | | | | | |
| 2006-06-03 | 154 | Ray Cuningham | 153½ | 5-1-0 | | Thomas & Mack Center, Las Vegas, Nevada, United States | W | TKO | 1 | 6 | |
| ~ time: 2:16 | referee: Jay Nady ~ | | | | | | | | | | |
| 2006-05-05 | 159 | David Estrada | 159 | 9-5-0 | | Lucky Star Casino, Concho, Oklahoma, United States | W | TKO | 3 | 6 | |
| ~ time: 1:05 | referee: Gerald Ritter ~ | | | | | | | | | | |
| 2006-04-21 | 163 | Manny Castillo | 164 | 13-11-2 | | Omar Shrine Temple, Mount Pleasant, South Carolina, United States | W | TKO | 3 | 6 | |
| ~ time: 2:37 | referee: Dale Frye | judge: Jeffrey Ensminger | judge: Kevin James | judge: Shawn Thompson ~ | | | | | | | |
| 2003-11-06 | 148 | Russell Jordan | 147 | 6-1-0 | | Hilton Hotel, Washington, District of Columbia, United States | W | TKO | 1 | 8 | |
| ~ judge: Joseph Cooper | judge: Lloyd Scaife | judge: Paul Artist ~ | | | | | | | | | |
| 2003-08-22 | 148 | Martinus Clay | 144½ | 7-4-0 | | Silverstar Casino, Choctaw, Mississippi, United States | W | KO | 1 | 4 | |
| 2003-05-23 | 147 | Sergio Soto | 148 | 11-8-1 | | Lucky Star Casino, Concho, Oklahoma, United States | W | TKO | 3 | 4 | |
| ~ time: 0:54 | referee: Joe Miller ~ | | | | | | | | | | |
| 2003-03-15 | 146½ | Rodney Tappin | 146½ | 5-0-0 | | Club Life, Dallas, Texas, United States | W | UD | 4 | 4 | |
| ~ judge: Don Griffin 40-36 | judge: Jesse Reyes | judge: Oren Shellenberger 40-36 ~ | | | | | | | | | |
| 2003-01-31 | 143½ | Juan Carlos Aranday | 143 | 8-34-5 | | Randy's Ballroom, San Antonio, Texas, United States | W | TKO | 3 | 6 | |
| ~ time: 0:35 | judge: Rick Crocker | judge: Joel Elizondo | judge: Steve Jaramillo ~ | | | | | | | | | |
| 2002-10-11 | 147½ | Edgar Pedraza | 155 | 1-6-2 | | Freeman Coliseum, San Antonio, Texas, United States | W | UD | 4 | 4 | |
| ~ judge: Rick Crocker 40-36 | judge: Roy Ovalle 40-36 | judge: Joel Elizondo 40-35 ~ | | | | | | | | | |
| 2002-09-12 | | Rashaan Abdul Blackburn | 141 | 4-13-0 | | Nation Nightclub, Washington, District of Columbia, United States | W | TKO | 3 | 4 | |
| ~ judge: David Jordan | judge: Joseph Cooper | judge: Lloyd Scaife ~ | | | | | | | | | |
| 2002-07-13 | 145 | Jose Luis Rodrigues | 147 | 7-3-0 | | The Aladdin, Las Vegas, Nevada, United States | W | TKO | 1 | 4 | |
| ~ time: 1:35 | referee: Toby Gibson ~ | | | | | | | | | | |
| 2001-12-09 | 145 | Maurice Chalmers | 146 | 1-2-0 | | Crocket Center, Austin, Texas, United States | W | TKO | 3 | 4 | |
| ~ time: 2:20 | judge: George Garland | judge: David Harris | judge: Arturo Velasquez ~ | | | | | | | | | |
| 2001-10-26 | 142 | Juan Jaime Rodriguez | 145 | 0-1-0 | | Erwin Center, Austin, Texas, United States | W | KO | 1 | 4 | |
| ~ time: 0:46 | judge: George Garland | judge: Scott Morrison | judge: Oren Shellenberger ~ | | | | | | | | | |
| 2001-08-25 | 138 | Maurice Chalmers | 145 | 0-0-0 | | Sunset Station, San Antonio, Texas, United States | W | TKO | 3 | 4 | |

7/2/2008 11:33 AM

http://www.boxrec.com/list_bouts.php?human_id=62137&cat=boxer

~ time: 1:49 | judge: Rick Crocker | judge: Steve Jaramillo | judge: Roy Ovalle ~



- this data may be incomplete and/or inaccurate -
© BoxRec - 0.3428

# EXHIBIT I

## EXCLUSIVE PROMOTIONAL AGREEMENT

**AGREEMENT** dated this 27th day of February, 2006 between GARY SHAW PRODUCTIONS, an LLC with offices at 33 Divan Way, Wayne, New Jersey 07470, and James Kirkland, (hereinafter called "FIGHTER").

**WHEREAS,** FIGHTER wishes to obtain certain promotional services and commitments of PROMOTER to further FIGHTER's career as a professional boxer, and PROMOTER is willing and able to provide the promotion of or arrange for the staging of Bouts (as defined below) for FIGHTER under the terms and conditions set forth below.

**NOW, THEREFORE,** in consideration of the mutual promises set forth herein, the parties agree as follows:

1.      FIGHTER hereby grants to PROMOTER the exclusive right to promote and/or arrange for professional boxing contests (individually a "Bout" and collectively "Bouts") to be engaged in by FIGHTER during the term of this Agreement, including extensions thereof.  PROMOTER or its designees shall promote or arrange for the staging of such Bouts subject to the terms and conditions set forth herein.  Such exclusive promotion rights shall include, without limitation, (a) all rights required to stage and sell tickets of admission to all such Bouts, and (b) the ancillary rights thereto, including, without limitation, all exclusive worldwide rights to, without limitation, broadcast, telecast, record, film and transmit electronically such Bouts for exhibition in all media in perpetuity and all merchandising rights related to such Bouts.

2.      (a)      This Agreement shall be effective and binding as of the date hereof and the term shall continue (except as provided elsewhere in this Agreement) until the Third anniversary of the date of the first Bout hereunder.  All references herein to "term" of the Agreement shall be deemed to include any extensions hereof.

(b)      The initial term of this Agreement, and the term of any extensions hereof, shall be automatically extended for the entire period that

FIGHTER is injured, under suspension of any kind, or is otherwise unable, unwilling or refuses to compete, or train to compete, in a Bout for any reason whatsoever.  In the event that FIGHTER temporarily retires, at PROMOTER's sole election this Agreement may be suspended during the period of FIGHTER's temporary retirement, if any, but shall become fully operative if and when FIGHTER resumes his professional boxing career and the term hereof shall be extended by the length of time of such suspension of the Agreement.

(c)    In the event that FIGHTER participates in a Bout while this Agreement is in full force and effect, regardless of when such Bout takes place, and he is declared the World Champion in any weight class of any or all of the WBA, WBC, IBF, WBO or other recognized sanctioning or rating organization as a result of his participation in such Bout, then the term of this Agreement shall be extended to include the entire period of time that FIGHTER defends his title five (5) times or three (3) years whichever is longer.

(d)    If FIGHTER is ranked as the number one or mandatory challenger in any weight class, of the WBA, WBC, WBO, IBF or other recognized sanctioning or rating organization at any time while this Agreement is in full Force and effect, then this Agreement shall be extended for the entire period or period that FIGHTER remains the number one ranked or mandatory challenger.

3.    PROMOTER will use commercially reasonable efforts to promote and/or arrange for the staging of, and FIGHTER shall engage in, a reasonable number of Bouts for FIGHTER, commensurate with FIGHTER's level of ability, record and ranking in the boxing industry and has television marketability.  Notwithstanding the foregoing, PROMOTER agrees to promote, or arrange for the staging of, a minimum of five (5) Bouts (including the first Bout) during the 12 months following the first Bout hereunder (the "First Contract Year"), five (5) Bouts during the 12 months following the expiration of the First Contract Year (the "Second Contract Year") and four (4) Bouts during the 12 months following the expiration of the Second Contract Year (the "Third Contract Year") and four (4) Bouts during the 12 months following the expiration of the Third contract

Year (the "Fourth Contract Year"), <u>four (4)</u> Bouts during the 12 months following the expiration of the Fourth Contract Year (the "Fifth Contract Year") <u>provided</u>, however, that PROMOTER shall be obligated to promote, or arrange for the staging of a minimum of only two (2) Bouts in any 12 month period during which FIGHTER is at any time either the World Champion or number one challenger or mandatory challenger, in any weight class, of any or all of the WBA, WBC, IBF, WBO or other recognized sanctioning or rating organization. PROMOTER shall be deemed to have complied with its obligations with respect to any Bout if it shall have made a *bona fide* offer (which shall include information relating to purse amount, date, opponent and site) to FIGHTER to promote a Bout in accordance with the provisions such Bout takes place for any reason other than PROMOTER's nonperformance. If such Bout is an undercard to a main event and that main event is canceled or postponed for any reason whatsoever, the failure of such Bout to take place shall not be deemed nonperformance by PROMOTER.

       4.  (a)     For all Bouts hereunder, PROMOTER and FIGHTER shall negotiate each purse in good faith, and be determined by mutual agreement between FIGHTER and PROMOTER. However, the minimum purse for such Bouts shall be not less than as follows:

    6 rounds- not less than $3500.

     8 rounds – not less than $ 4,500.00

    10 rounds – not less than $ 5,500.00


Bouts on television networks other than HBO or Showtime (including Bouts on ShoBox):

8-round/10-round co-feature Bouts: not less than $ 5,500.00

10-round main event Bout: not less than $ 12,500.00

12-round main event Bout: not less than $15,000.


*Bouts on Showtime (not including ShoBox):*

Co-feature Bouts: not less than $ 25,000.00

Main Event Bouts: Challenger not less than $ 35,000.00

*Bouts on HBO "Boxing After Dark:"*

Co-feature Bouts:  not less than $ 30,000.00

Main Event Bouts:  not less than $ 75,000.00

*Bouts on HBO "World Championship Boxing:"*

Co-feature Bouts:  not less than $ 40,000.00

Main Event Bouts:  not less than $ 100,000.00

      (b) Notwithstanding the foregoing relating to each of the contract years, PROMOTER reserves the right to offer Bouts to FIGHTER with purses below this purse scale provided such Bouts are offered for increased activity, and are above and beyond the minimum number of Bouts set forth in Section 3 above.

      (c) If at any time during the period that this Agreement is in full force and effect, FIGHTER engages in a World Championship Bout (sanctioned by any or all of the WBC, WBA, WBO or IBF) in any weight class:  (i) as a challenger, the purse for such Bout shall be negotiated in good faith but in no event shall be less than $35,000.

      5.  In the event that PROMOTER shall fail, for any reason other than injury or the physical disability of FIGHTER or a Bout opponent as provided in Section 8 of this Agreement, to provide the minimum number of Bouts for any contract year, PROMOTER may cure such breach by providing compensation to FIGHTER equal to $2,000 per Bout up to 10 Rounds and $5,000 for any 10 Round for which PROMOTER did not provide or for which a *bona fide* offer was not made.  Such compensation shall be paid within 30 days of the end of the applicable contract year.

      6.  For each Bout hereunder, PROMOTER shall provide, at no cost to FIGHTER, round-trip transportation and lodging from FIGHTER's home city to the site of the Bout as follows:

      HOTEL ROOMS:    PROMOTER shall provide FIGHTER with four (4) rooms for all Bouts; provided that if FIGHTER is participating in a Bout for a World

Championship sanctioned by the WBA, WBC, IBF or WBO, then PROMOTER shall provide FIGHTER with 5 hotel rooms, 1 of which shall be a suite if available.

AIRLINE TICKETS: PROMOTER shall provide FIGHTER with up to five (5) round-trip coach tickets for all Bouts; provided that if FIGHTER is participating in a Bout for a World Championship sanctioned by the WBA, WBC, IBF or WBO, PROMOTER shall provide FIGHTER with up to six (6) round-trip tickets – one (1) first-class and five (5) coach. First Class Tickets will only be issued for domestic flights within the mainland USA.

BOUT TICKETS: For any Bout that said fighter is engaged in he shall receive 6 (six) tickets if GSP solely promotes the entire event. For any Bout that the fighter is in the main event, PROMOTER shall provide FIGHTER with 4 (four) tickets in the first price category and 2 (two) tickets in the second price category; provided that if FIGHTER is participating in any World Championship Bout sanctioned by the WBA, WBC, IBF or WBO, PROMOTER shall provide FIGHTER with 4 (four) tickets within the first three (3) rows and four other tickets.

SIGNING BONUS: At the signing of this agreement, Promoter agrees to pay $15,000 (Fifteen Thousand Dollars) towards Fighter's outstanding legal and boarding expenses with Co-Manager Michael Miller.

FIGHTER SALARY: Promoter agrees to pay $1,000 (One Thousand Dollars) per month for 12 months (One Year) beginning April 1, 2006 to offset Fighter's living and training expenses.

7.  (a)  PROMOTER shall select the date and site for each Bout.

(b)  The opponent for each Bout hereunder shall be mutually agreed upon by PROMOTER and FIGHTER. FIGHTER's approval of opponents shall not be unreasonably withheld. Notwithstanding the foregoing, in the event the opponent for any Bout is mandated by any sanctioning body or any other applicable ratings organization, FIGHTER shall not have the right to disapprove of any such opponent. If FIGHTER insists upon a fight that PROMOTER does not agree with, then no minimums shall apply.

8.  (a)  In the event that FIGHTER shall become permanently or

partially disabled during the term of this Agreement, PROMOTER shall have the right, but not the obligation, to terminate this Agreement, without further liability or obligation to FIGHTER.

(b)    Should this Agreement be extended for any reason pursuant to Section 2(b), the obligation of FIGHTER and PROMOTER relating to the minimum Bouts for the period within which such extension(s) occur(s) shall be eliminated for the period of such extension.

9.    If a purse bid is forced at any time during the term of this Agreement, PROMOTER agrees to use its best commercially reasonable efforts to win such purse bid. In the event that PROMOTER fails to win the purse bid, FIGHTER shall be allowed to participate in the purse bid Bout, provided, however, that in consideration for PROMOTER allowing FIGHTER to participate in such purse bid Bout and for using its best efforts to win the purse bid, which is likely to cause an increase in the winning purse bid, FIGHTER agrees to assign and pay over to PROMOTER twenty-five percent (25%) of the amount he is to receive up to $2,000,000 and thereafter twenty percent (20%). FIGHTER agrees to take all necessary action to arrange for PROMOTER to be paid directly such amount simultaneously with the payment of such purse bid amount. Any purse bid Bout in which the FIGHTER is allowed to participate shall constitute one of the minimum numbers of Bouts referred to in Section 3.

10.    FIGHTER grants to PROMOTER the exclusive worldwide rights to each event promoted under the terms of this Agreement, in perpetuity, including the unrestricted right to telecast, photograph, record, electronically transmit or otherwise reproduce the event and the events immediately preceding and following the Bout and between the rounds in any and all media in or by any manner, method or devise (now know or hereafter devised), including, without limiting the generality of the foregoing, the unlimited and unrestricted right to telecast the Bout by means of live or closed circuit television, paid, subscription or toll television, films, tapes, electronic transmission on the Internet, broadband, video-on-demand, or otherwise, for exhibition in all media and in all languages, whether for theatrical exhibition or for sale, lease or license or home use,

including audio and audio-visual cassettes, "EVR," holograms and the unlimited right to deal with any or all the foregoing, and all other rights, privileges, benefits, matters and things incident to or arising out of all or any of the foregoing.

11.    PROMOTER and its licensees shall have the right and may grant to others the right to reproduce, print, publish, electronically transmit or disseminate in any medium the name, portrait, likeness, voice and biographical material concerning the FIGHTER for the purpose of advertising and/or promoting and/or exploiting the Bouts, including on a World Wide Web site or by any other means via the Internet, souvenir programs, fight programs, posters, banners, buttons, tee-shirts, hats, coins and other souvenir products. In addition, PROMOTER and its licensees shall have the right to reproduce, print, publish, electronically transmit or disseminate in any media the name, portrait, likeness, voice and biographical material of the FIGHTER as news or information and for PROMOTER's own promotional purposes. The rights granted in this Section shall include the right to shoot videotaped footage of FIGHTER training for Bouts and to televise or disseminate same to the media.

12.    PROMOTER shall have the right to assign, lease or transfer any or all of the rights granted to it herein to any person, firm or corporation for the sole purpose of a specific promotion, but will be responsible to FIGHTER for fulfilling all terms herein. Any assignment by PROMOTER of its entire rights for all Bouts hereunder shall require written approval from FIGHTER, which shall not be unreasonably withheld; provided, however, that consent is hereby given and deemed given to any such assignment to an entity in which Gary Shaw is the President or Chief Executive Officer or in which Gary Shaw jointly or singly, have at least a fifty percent (50%) beneficial ownership interest. The obligations of FIGHTER hereunder are personal to FIGHTER, and neither the benefits nor the duties of FIGHTER hereunder may be assigned, pledged or transferred for any reason.

13.    FIGHTER agrees to execute and comply with the standard

boxing contracts for each Bout on the forms required by the applicable athletic commission and any and all other documents reasonably required in connection with the exercise of the rights granted to PROMOTER hereunder and which are consistent with this Agreement.

14.    (a)    FIGHTER hereby acknowledges and agrees that the services to be rendered or furnished by him hereunder and the rights granted to PROMOTER by this Agreement are of a special, unique, unusual and extraordinary character, giving them peculiar value, the loss of which would cause irreparable damage or injury that cannot not be reasonably or adequately compensated by damages in an action at law. Any equitable relief sought or obtained by PROMOTER shall be in additional to and without prejudice to any other rights or remedies which PROMOTER may have.

(b)    In addition, FIGHTER hereby expressly agrees that, during the term of this Agreement as well as during the Exclusive Negotiation Period provided for in Section 20 below, he will not enter into discussions or negotiations with any other person or entity relating directly or indirectly to such person or entity providing FIGHTER with any or all of the services provided to FIGHTER by PROMOTER pursuant to this Agreement. FIGHTER further expressly agrees that, during the term of this Agreement as well as during the Exclusive Negotiation Period provided for in Section 20 below, he will not participate in any Bout for another promoter or any other individual or entity, and unconditionally covenants not to oppose any request by PROMOTER for injunctive relief preventing FIGHTER from fighting for another promoter, individual or entity during the term of this Agreement as well as during the Exclusive Negotiation Period provided for in Section 20 below on the ground that Promoter has an adequate remedy at law. The provisions of this Section 19 (b) shall be equally applicable during the ROFR (as defined in Section 21 below) so long as PROMOTER retains rights to match an offer pursuant to Section 21 below.

15.    FIGHTER represents, warrants and agrees that he is free to enter into this Agreement, and has not heretofore entered into and will not into any other

agreement or any other athletic contest without the approval of PROMOTER and that there is, in fact, no contract or agreement in existence that conflicts with the provisions hereof or which grants any similar or conflicting right which would or might interfere with the FIGHTER's full and complete performance by the FIGHTER of the obligations hereunder or the free, unimpaired exercise by PROMOTER of any of the rights herein granted to it. FIGHTER acknowledges that PROMOTER is entering into this Agreement in reliance upon the foregoing warranties, representations, and covenants, and FIGHTER agrees to indemnify and hold harmless PROMOTER from and against any and all liabilities, obligations, damages, penalties, claims, actions, suits, costs and expenses ( including, without limitation, attorney's fees) of any kind and nature which are imposed upon or incurred by PROMOTER relating to or arising out of any breach of the above representations or warranties.

16. Nothing in this Agreement shall be construed as creating an employer/employee relationship of any kind between PROMOTER and FIGHTER, or as appointing PROMOTER as FIGHTER's agent. It is intended that FIGHTER shall remain an independent contractor, responsible for his own actions and expenses, including trainers, manager, sparring partners, training facility, equipment and professional membership and sanctioning fees. FIGHTER shall select his own managers and trainers. FIGHTER shall be exclusively liable for any payments due to his manager, trainers, and other support personnel. FIGHTER explicitly acknowledges that nothing in this Agreement creates a fiduciary obligation to FIGHTER by PROMOTER.

17. PROMOTER shall have the right at its election to obtain life or other insurance upon FIGHTER in such amounts as PROMOTER may determine at its own cost and expense, including, but not limited to, insurance against the failure of FIGHTER to appear and to participate in any Bout promoted pursuant to the terms of this Agreement. FIGHTER shall have no right, title, or interest in such insurance. FIGHTER fully agrees to cooperate and assist PROMOTER in obtaining such insurance including submitting to such physical or other examinations of FIGHTER as may be required to obtain such insurance. The results of any such physical examinations shall be kept

strictly confidential.

18. Except as otherwise provided herein, there shall be no third party beneficiaries to this contract.

19. In the event the FIGHTER loses any of the Bouts promoted pursuant to this Agreement, PROMOTER shall, in addition to the rights provided by Sections 20 and 21 below, have all of the following options, none of which shall be exclusive:

(a) PROMOTER shall have the option of renegotiating the compensation terms of this Agreement. In such event, PROMOTER shall provide FIGHTER with written notice within twenty (20) days of said loss that PROMOTER is exercising its renegotiation option. PROMOTER and FIGHTER shall then have twenty (20) days (the "Renegotiation Period") from the date FIGHTER receives PROMOTER's notice to renegotiate but no longer than a total of forty (40) days from date of loss, in good faith, the compensation terms of this Agreement. In the event PROMOTER and FIGHTER are unable to reach mutually agreeable terms within such time, PROMOTER shall then have the option of terminating this Agreement as set forth in Section 19 (b) below.

(b) PROMOTER shall have the option of terminating this Agreement by furnishing FIGHTER with written ("Termination Notice") no later than thirty (30) days following the date of said loss, or following the expiration of the Renegotiation Period in the event that PROMOTER elected to exercise the renegotiation option.

20. Upon the expiration of the Agreement or in the event that PROMOTER exercises the option to terminate this Agreement as set forth in Section 19(b), FIGHTER grants PROMOTER an optional right of exclusive negotiation for thirty days (30) days after the date of expiration or termination (the "Exclusive Negotiation Period") during which time the parties shall attempt to agree on terms of a new contract. PROMOTER may, but is not obligated to, exercise such option. PROMOTER shall

indicate whether it has elected to exercise the option for an Exclusive Negotiation Period in its Termination Notice to FIGHTER or by sending written notice to FIGHTER no later than thirty (30) days prior to expiration of the Agreement.

21. (a) PROMOTER shall have a right of first and last refusal ("ROFR") in regard to entering into a promotional agreement with FIGHTER for the duration of the ROFR Period, as defined below. In the event that FIGHTER receives a bona fide third party offer for FIGHTER's services during the ROFR, FIGHTER shall forward written notice of same to PROMOTER, which shall include all relevant terms of the offer. PROMOTER shall have ten (10) days from receipt of such written notice to match said offer by sending written notice to such effect to FIGHTER. In the event that PROMOTER chooses to match such offer, PROMOTER and FIGHTER shall promptly enter into an agreement on the same material terms and conditions as embodied in the third party offer to FIGHTER. If PROMOTER chooses not to match the offer, FIGHTER shall have the right to enter into an agreement with the third party on the terms and conditions set forth in the notice to PROMOTER. Any alterations to the terms of the third party offer, or any subsequent bona fide third party offers in the event that a given offer not matched by PROMOTER is not consummated with the offeror, shall be forwarded to PROMOTER pursuant to the terms herein.

(b) For purposes of this Section, the "ROFR Period" shall mean (i) thirty (30) days beginning on the last day that this Agreement is in full force and effect or (ii) in the event the Exclusive Negotiation Period option is exercised by PROMOTER, a period of one year from the conclusion of the Exclusive Negotiation Period.

(c) PROMOTER may satisfy its obligation to match an offer from a third party, as referred to in Section 21 (a) above, by coping the material terms of the third party offer or by making another offer which would provide the FIGHTER with the same total amount of purses as contained in the third party offer. If the PROMOTER determines to copy the material terms of the third party offer, it shall have the right to select different locations and dates for Bouts so long as the location and opponents are comparable and the dates at issue are within three months of the dates described in the

third party offer.

      22.  FIGHTER agrees to wear logos of Gary Shaw Productions and also agrees that no working, symbol, picture, design, name (except his own) or other advertising or informational material shall appear on the trunks, robe, shoes or other clothing worn by FIGHTER, his trainers, seconds or assistants during any Bouts hereunder, without prior approval of PROMOTER, such approval not to be unreasonably withheld.  FIGHTER agrees that no wording, symbols, pictures, designs, name or other advertising or international material relating to any gaming or sports betting entities shall appear on any body part of FIGHTER or his trainers, seconds or assistants during and/or at the BOUT without the prior approval of PROMOTER, such approval to be at PROMOTER's sole discretion.

      23.  The laws of the State of New York applicable to contracts executed and to be fully performed in the State of New York shall govern this Agreement without regard to principles of conflict or choice of laws.  The parties hereto irrevocably consent to the personal jurisdiction of the Courts of the State of New York.  The parties further agree to the exclusive jurisdiction of the federal and state courts located in New York County, New York, and that service of any process either by certified mail (return receipt requested) or by Federal Express to a party's address as listed in Section 25 below, will be deemed to constitute good and sufficient service.

      24.  FIGHTER acknowledges that he will participate in each Bout promoted hereunder to the best of FIGHTER's ability, that FIGHTER shall prepare and honestly compete by exercising FIGHTER's maximum skill, and that there is no impairment to FIGHTER doing so.  In the event that any impediment to FIGHTER's performance should arise, FIGHTER shall immediately notify PROMOTER.  Without limiting any of PROMOTER's rights or remedies under law or equity, if PROMOTER believes in its good faith judgment, based upon demonstrable facts, that FIGHTER cannot give, will not give, or has not given an honest exhibition of FIGHTER's maximum skills, PROMOTER may terminate this Agreement.

25. All notices, elections, payments or other communications to be sent to the parties hereto shall be addressed and sent by certified or registered mail (return receipt requested and postage prepaid) or by confirmed fax as follows:

FIGHTER:

WITH COPY TO:

Michael Miller  C/O  James Kirkland

926 Chulie Drive

San Antonio,Texas  78216

PROMOTERS:

GARY SHAW PRODUCTIONS LLC
555 Preakness Avenue
Totowa, New Jersey  07512
Fax (973) 904-1250

WITH COPY TO:

Judd Burstein, Esq.
1790 Broadway, Suit 1501
New York, NY  10019.
Fax:  212-974-2944

ADDITIONAL COPY:

Cameron Dunkin
9269 Tournament Canyon Drive
Las Vegas,Nevada  89144
EMAIL: cmd5@cox.net

26. Nothing herein shall prevent PROMOTER from engaging in promotional activities for any other fighter, including other fighters in the same weight

class as FIGHTER, and PROMOTERS shall have not duty or obligation to direct or arrange any particular Bout for FIGHTER as opposed to any other fighter.

27. Any breach of this Agreement by PROMOTER or FIGHTER, other than FIGHTER's breach of Sections 13, 14, 15, 19, 20 and 21 above shall be deemed waived by the other unless within ten (10) days after the respective party acquires notice of such breach, or of other facts sufficient to put him on notice of such breach, such party shall serve written notice upon the other of such breach.

28. FIGHTER acknowledges that he has read and understands the provisions of this Agreement and that he has had the opportunity to have independent counsel or advisers (a) explain the implications of the commercial relationship between FIGHTER and PROMOTER and (b) answer any questions FIGHTER has or may have had with respect to the terms of this Agreement and the parties' respective rights and obligations. Based upon the foregoing, FIGHTER acknowledges that this Agreement is fair and reasonable, and that he believes it to be in his best interests to enter into this Agreement.

29. Upon execution of this Agreement, the parties expressly agree to and hereby waive and release each other, as well as their successors, assigns, officers, directors, employees and attorneys, from any claims or obligations, known, or unknown, asserted or unasserted, that either may have with respect to the other arising from the beginning of the world to the date of the execution of this Agreement.

30. Except as may be required by law, neither party shall disclose to anyone, other than a party's officers, directors, employees, attorneys, accountants, lenders, applicable governmental authorities or anyone else who requests information pursuant to compulsion by legal process, any information concerning the economic terms set forth in this Agreement.

31. This agreement sets forth the entire agreement among the

parties and supersedes and replaces all prior and contemporaneous warranties, representations and agreements, whether written or oral, and whether made by the parties themselves or by their agents. There are no other agreements or promises made by the parties to each other apart from those contained in this Agreement. This Agreement may be modified only by a writing signed by all of the parties.

32. This agreement may be executed in multiple counterparts, each of which shall be deemed to be an original and all of which when taken together shall constitute one and the same agreement. Facsimile machine copies of this Agreement may be executed by the parties and shall be deemed as binding as if originals had been executed.

33. Even after the term of this Agreement, the provisions of this Agreement shall apply to any Bout in which the FIGHTER participates which was negotiated for or arranged by PROMOTER, either by itself or in conjunction with another promoter, regardless of when the Bout itself actually takes place. In addition the FIGHTER agrees that, in the event that the FIGHTER enters into or ratifies a multifight agreement with a broadcast network, including, but not limited to, HBO or Showtime or ESPN, the terms of this Agreement shall be extended, if necessary, so as to be coextensive with the terms of such multifight agreement. The PROMOTER GSP shall be included in any multi-fight agreement as a party to the agreement.

34. In the event that any aspect of this Agreement is deemed by a Court of competent jurisdiction to be invalid for any reason, this Agreement shall remain in full force and effect with the sole exception of the portion(s) deemed invalid. In addition, in the event that any Court finds a provision to be invalid, the parties will request the Court modify such provision so as to apply the terms of such provision to the maximum extent provided by law.

35. PROMOTER shall provide to FIGHTER all required disclosures by a promoter to a fighter as required by Section 13 of the Muhammad Ali

Reform Act.

36. The parties agree that this Agreement shall not be deemed to have been drafted by any one party, and that no ambiguity in the Agreement should be construed as a matter of law for or against any party.

**IN WITNESS WHEREOF**, the parties have executed this Agreement on the day and year first written above.

**GARY SHAW PRODUCTIONS LLC**

By: _____

Title: _____

Witness: _____

James Kirkland

WITNESS

_____

Cameron Dunkin    Co-Manager

WITNESS

Michael Miller    Co-Manager

# **<u>EXHIBIT J</u>**

# Law Office of Michael Miller

MICHAEL MILLER
ATTORNEY AT LAW

926 CHULIE DRIVE
SAN ANTONIO, TX 78216

TELEPHONE: 210-225-6666
FACSIMILE: 210-225-2500
email: mmiller@michaelmillerlaw.com

March 10, 2008

Gary Shaw
Gary Shaw Productions
555 Preakness Avenue
Totowa, NJ   07512

RE:   James Kirkland

Dear Gary:

Several weeks ago James Kirkland signed a bout contract for the May 17, 2008 HBO card. At your earliest convenience, please sign and forward us a signed copy of this contract. I also understand that there is a chance that James Kirkland could be the main event on that card. If this is the case, I would ask that you re-submit a bout contract to us for $100,000.00 for payment for James Kirkland to be the main event on that case.

I also noticed that James Kirkland was not given the appropriate number of fights last year. Would you please forward a check to compensate Mr. Kirkland for these missed opportunities. Please send the check to my address.

We look forward to working with you on the upcoming HBO card.

Very truly yours,

LAW OFFICE OF MICHAEL MILLER

MICHAEL MILLER

# EXHIBIT K

# Law Office of Michael Miller

MICHAEL MILLER
ATTORNEY AT LAW

926 CHULIE DRIVE
SAN ANTONIO, TX 78216

TELEPHONE: 210-225-6666
FACSIMILE: 210-225-2300
email: mmiller@michaelmillerlaw.com

June 17, 2008

*Via Fax: 973-904-1250*
Gary Shaw
Gary Shaw Productions, LLC
555 Preakness Avenue
Totowa, New Jersey 07512

Re: **James Kirkland**

Dear Mr. Shaw:

As you know I am the co-manager of James Kirkland.

On or about February 27, 2006, a contract was entered into between Gary Shaw Productions, LLC ("GSP") and James Kirkland. Under that contract GSP was to provide James Kirkland with a minimum of five bouts per year for each of the first two contract years. In fact, GSP did not do so; for the second contract year it provided only three bouts. This had the effect of impairing Mr. Kirkland's career.

This was brought to your attention by my letter of March 10, 2008. Absolutely no steps were taken to cure.

We also wish to point out that GSP is in violation of the Muhammad Ali Act in that it has provided no revenue statements to Mr. Kirkland as required by the Act and under your own contract. Upon information and belief, GSP is doubly in violation since it took funds from the site and from telecasters in direct violation of 15 USC 6307(e)(b).

Please be advised that as a result of these breaches and actions Mr. Kirkland hereby terminates the contract, with a full reservation of rights.

Please be guided accordingly.

This letter is not intended to outline all legal or factual claims and is sent with a full reservation of all rights.

Page 2
June 17, 2008
Gary Shaw
Gary Shaw Productions, LLC


                          Very truly yours,

                          LAW OFFICE OF MICHAEL MILLER

                          MICHAEL MILLER

cc:    James Kirkland
       Ann Wolfe
       Cameron Dunkin
       Scott Shaffer

bc:    Patrick English

# EXHIBIT L

**THE LUSTIGMAN FIRM, P.C.**
ATTORNEYS
149 MADISON AVENUE
SUITE 805
NEW YORK, NY 10016-6713
TEL:(212) 683-9180 – FAX: (212) 683-9181
www.lustigmanfirm.com

SHELDON S.LUSTIGMAN                                ADMITTED NY & NJ
ANDREW B. LUSTIGMAN
SCOTT A. SHAFFER

June 27, 2008

**VIA E-MAIL**

Michael Heitner, Esq.
Herrick, Feinstein LLP
2 Park Avenue
New York, NY 10016

                    Re:    Nonito Donaire

Dear Michael:

        It has come to Gary Shaw's attention that Cameron
Dunkin has offered James Kirkland's services to Top Rank.
Please advise Bob Arum that James Kirkland is under an
exclusive promotional contract to Gary Shaw Productions.

                            Sincerely yours,

                            Scott Shaffer

cc: Gary Shaw