## UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NONITO DONAIRE and JAMES KIRKLAND, | X : | 08 CV 6135 (CM)(AJP) |
| Plaintiffs, | : | |
| v. | : : | |
| GARY SHAW PRODUCTIONS, LLC, | : : | **AMENDED ANSWER, COUNTERCLAIM AND THIRD-PARTY COMPLAINT** |
| Defendant, | : | |
| | X | |
| GARY SHAW PRODUCTIONS, LLC, | : : | |
| Third-party Plaintiff, | : : | |
| v. | : : | |
| TOP RANK, INC., CAMERON DUNKIN and MICHAEL MILLER, | : : : | |
| Third-party Defendants. | : : | |
| | X | |

Gary Shaw Productions, LLC (hereinafter "GSP"), by and through the undersigned attorneys, hereby responds to the Complaint and Jury Demand as follows:

1. Admits Nonito Donaire is a boxer and lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations.

2. Admits James Kirkland is a boxer and lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations.

3. Admits the allegations contained in Paragraph 3.

4. Admits the allegations contained in Paragraph 4.

5. Admits the allegations contained in Paragraph 5.

6. Admits the allegations contained in Paragraph 6.

7. Admits the allegations contained in Paragraph 7.

8. Admits the allegations contained in Paragraph 8.

9. Admits the allegations contained in Paragraph 9.

10.   Admits the allegations contained in Paragraph 10.

11.   Denies the allegations contained in Paragraph 11.

12.   Admits the allegations contained in Paragraph 12.

13.   Denies the allegations contained in Paragraph 13.

14.   Denies the allegations contained in Paragraph 14.

15.   Refers the Court to the referenced contract for an accurate recitation of the terms thereof.

16.   Admits the allegations contained in Paragraph 16.

17.   Admits that Donaire only fought once since becoming champion, but that it was due to the actions of Donaire himself and/or his managers; denies that GSP has not met its contractual obligations and denies all remaining allegations in Paragraph 17.

18.   Denies the allegations contained in Paragraph 18.

19.   Denies the allegations contained in Paragraph 19 except admits counsel for Donaire sent Exhibit C.

20.   Denies the allegations contained in Paragraph 20.

21.   Denies the allegations contained in Paragraph 19 except admits counsel for Donaire sent Exhibit F.

22.   Lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 except admits that Donaire has apparently entered into a contract with Top Rank, Inc. for a series of bouts and that no bout occurred before July 7, 2008.

23.   Admits GSP sent Exhibit G but denies Plaintiffs' characterization of the phone call alleged in paragraph 23.

24.   Admits the allegations contained in Paragraph 24, except expresses no opinion as to the vague use of the word "prominent".

25.   Admits the allegations contained in Paragraph 25.

26.   Denies the allegations contained in Paragraph 26 except refers the Court to the referenced contract for an accurate recitation of the terms thereof.

27.   Admits the allegations contained in the first two sentences of Paragraph 27 and denies the third sentence contained therein.

28.   Denies the allegations contained in Paragraph 28 as the obligation to provide five fights was waived by Kirkland.

29.   Denies receiving the letter attached as Exhibit H.

30.  Denies the allegations contained in Paragraph 30 except admits that Kirkland fought a nationally televised bout on May 17, 2008 and received the largest purse of his career.

31.  Denies the allegations contained in Paragraph 31. HBO, the televising network, requested that a boxer named Yuriorkis Gamboa, not James Kirkland, appear in the main event. With respect to the contract, GSP respectfully refers the Court to the referenced contract for an accurate recitation of the terms thereof.

32.  Denies the allegations contained in Paragraph 32 except does not respond to the conclusions of law contained therein as no response is necessary.

33.  Admits receipt of Exhibit K.

34.  Lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34.

35.  Denies the allegations contained in Paragraph 35, except admits sending Exhibit L.

36.  All prior responses are incorporated herein by reference.

37.  Denies the allegations contained in Paragraph 37 except lacks knowledge and information sufficient to form a belief as to what Donaire and/or Kirkland subjectively believed.

38.  Denies the allegations contained in Paragraph 38.

4

39.  Does not respond to the conclusions of law contained in Paragraph 39 as no response is necessary.

40.  Denies the allegations contained in Paragraph 40 except states that the first sentence constitutes a mere truism.

41.  Denies the allegations contained in Paragraph 41 except admits that Donaire is obligated to defend his title under certain conditions or he would lose it. GSP denies that Donaire's title was put at risk due to the alleged inactivity.

42.  Denies the allegations contained in Paragraph 42.

43.  Denies the allegations contained in Paragraph 43.

44.  Denies the allegations contained in Paragraph 44.

45.  All prior responses are incorporated herein by reference.

46.  GSP respectfully refers the Court to the cited authority for an accurate recitation of the terms thereof.

47.  Denies the allegations contained in Paragraph 47.

48.  GSP respectfully refers the Court to the cited authority for an accurate recitation of the terms thereof.

49.  Denies the allegations contained in Paragraph 49.

50.  Denies the allegations contained in Paragraph 50.

51.  GSP respectfully refers the Court to the cited authority for an accurate recitation of the terms thereof.

52.  All prior responses are incorporated herein by reference.

53.   Denies the allegations contained in Paragraph 53.

54.   Denies the allegations contained in Paragraph 54.

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs have failed to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

The causes of action alleged in the Complaint are barred by the doctrines of laches, estoppel, and/or waiver.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs have suffered no damages.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by their own material breaches of their respective contracts.

## FIFTH AFFIRMATIVE DEFENSE

The causes of action alleged in the Complaint are barred by the doctrines of laches, estoppel, and/or waiver.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs are not entitled to injunctive relief because of the existence of an adequate remedy at law.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs are not entitled to injunctive relief because of unclean hands.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the intentional, culpable

conduct of themselves and/or their authorized representatives.

### NINTH AFFIRMATIVE DEFENSE

The causes of action alleged in the Complaint fail due to the malfeasance of Plaintiffs and/or their authorized representatives.

### TENTH AFFIRMATIVE DEFENSE

Plaintiffs have waived any minimum bout requirements by choosing to deal with GSP in anticipation of other contractual provisions.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff Donaire waived the right to demand a second bout in the first year of the contract through his decision to arrange and pursue bouts outside the United States.

### TWELFTH AFFIRMATIVE DEFENSE

As plaintiffs have suffered no economic injury, the Muhammad Ali Act (15 U.S.C. § 6301 et seq.), the statute affords them no private right of action.

### THIRTEENTH AFFIRMATIVE DEFENSE

The Muhammad Ali Act (15 U.S.C. § 6301 et seq.) does not provide for, nor are Plaintiffs otherwise entitled to, contractual recission.

### FOURTEENTH AFFIRMATIVE DEFENSE

The terms of the contracts provide the remedy for the breaches alleged by Plaintiffs which does not include contract

termination.

### FIFTEENTH AFFIRMATIVE DEFENSE

With respect to Donaire, at the time he signed the contract, GSP could not have promised him a world title fight against Vic Darchinyan because at the time of signing, Donaire was not ranked among the top fifteen flyweights by the International Boxing Federation ("IBF") and therefore, Donaire was ineligible to challenge for the title held by Darchinyan.

### RIGHT TO ASSERT ADDITIONAL DEFENSES

GSP reserves the right to assert additional affirmative defenses that become apparent during discovery.

**WHEREFORE,** GSP prays for judgment against Plaintiffs as follows:

A.    That Plaintiffs take nothing by way of their Complaint;

B.    That the Court dismisses the Complaint with prejudice and each purported cause of action therein;

C.    That GSP be awarded the costs of defending this suit, including attorneys' fees;

D.    For such other and further relief as the Court may deem just and proper.

### COUNTERCLAIMS AND THIRD-PARTY CLAIMS

As and for its counterclaims and third-party claims, Gary Shaw Productions, LLC ("GSP") alleges as follows:

8

## INTRODUCTION

1.    Gary Shaw Productions, LLC is a boxing promoter who provided Plaintiffs Nonito Donaire and James Kirkland with the best opportunities of their professional boxing careers, and due to either their own greed, or because they have been misled by their management, they have rewarded GSP by breaching their respective contractual obligations and filing this action. After GSP undertook the risk of helping these two boxers advance their careers to the point where their physical efforts will be financially rewarded, Donaire and Kirkland should not be allowed to skip out of their contractual obligations.

## PARTIES, JURISDICTION AND VENUE

2.    As alleged in the Complaint, Nonito Donaire is a professional boxer who is a citizen of the Republic of the Philippines and resident of California.

3.    As alleged in the Complaint, James Kirkland is a professional boxer who is a citizen and resident of Texas.

4.    GSP is a limited liability company organized under the laws of New Jersey with its principal place of business in New Jersey.

5.    Upon information and belief, Cameron Dunkin is a citizen and resident of Nevada. Dunkin is one of the most experienced managers in the boxing industry and has managed several world champions and former Olympians. With respect to

9

this case, Dunkin manages Nonito Donaire and co-manages James Kirkland.

6.    Upon information and belief, Michael Miller is a citizen and resident of Texas, who is an attorney at law. With respect to this case, Miller co-manages James Kirkland.

7.    Upon information and belief, Kirkland has a third co-manager, Ann Wolfe.

8.    This Court has jurisdiction over this action by virtue of 28 U.S.C. § 1331 and 1332.

9.    The amount in controversy exceeds seventy five thousand dollars ($75,000.00).

10.    The foregoing parties have consented to personal jurisdiction and venue in the Southern District of New York.

11.    Venue is proper in this district under 28 U.S.C. § 1391.

12.    This Court has subject matter jurisdiction over the claims stated herein because of the pendency of the first action by Donaire and Kirkland against GSP; the claims asserted here as counterclaims and third party claims arise out of the same transactions and occurrences which are the subject matter of the first action and supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

13.   Upon information and belief, Third Party Defendant Top Rank, Inc. ("Top Rank") is a corporation organized under the laws of Nevada with its principal place of business in Nevada.

14.   Top Rank is subject to personal jurisdiction in New York as it does business in New York through its promotion of major boxing events in New York and its other direct contacts with the State of New York.

## ALLEGATIONS RELATING TO THE DONAIRE CONTRACT

15.   Prior to the time Nonito Donaire signed with GSP, he had been provided with four opportunities to box and thereby earn money by GSP: October 1, 2005; November 5, 2005; July 29, 2006 and October 7, 2006 (see Exhibit A to Complaint (listing bouts)).

16.   Also prior to the time he signed with GSP, Nonito's brother Glen also boxed on GSP shows.

17.   On May 9, 2007, when Nonito Donaire signed his contract with GSP ("the Donaire Contract", attached to Complaint as Exhibit A), he was a talented but little-known 112-pound Philippine boxer who had never gotten the chance to fight for a world championship.

18.   GSP negotiated the Donaire Contract with Donaire's manager, Dunkin, one of the most experienced managers in the sport (Dunkin is also the co-manager of Kirkland).

19.   GSP did not speak with Donaire about the proposed contract prior to its signing. GSP negotiated only through Dunkin.

20.   Dunkin is a signatory to the Donaire Contract.

21.   The Donaire Contract provided that GSP would have the exclusive right to promote Donaire's professional boxing matches for at least three years. See Complaint, Exhibit B at ¶2.

22.   Although his Complaint alleges Donaire was promised a world championship fight on July 7, 2007 only if he signed the long-term Donaire Contract with GSP, Donaire omits from his Complaint the fact that he had another fight scheduled for May 12, 2007 on a show promoted by someone other than GSP.  Had Donaire been defeated or injured in the May 12th fight, GSP could not have delivered a world title fight to Donaire less than two months later.

23.   Besides the uncertainty of how the May 12th fight would turn out (Donaire won the fight),  Donaire's allegation that he was promised a world championship fight only if he signed the Donaire Contract, the terms of the Donaire Contract run directly counter to his allegations. The contract contemplates only the possibility of a championship fight at some point in the future and makes a number of provisions for scenarios that do not involve world championship fights. Significantly, Paragraph 31 of the Donaire Contract states:

This agreement sets forth the entire agreement among the parties and supersedes and replaces all prior and contemporaneous warranties, representations and agreements, whether written or oral, and whether made by the parties themselves or their agents. There are no other agreements or promises made by the parties to each other apart from those contained in this Agreement.

Complaint, Ex. B at ¶31. <u>Nonito Donaire signed his initials right next to this paragraph, and his experienced boxing manager, Cameron Dunkin, signed at the end of the contract as well.</u>

24.   If GSP did make such a promise to Donaire (which it did not), then as an experienced boxing manager, Dunkin surely would have demanded that this important promise be included in the contract, and he would not have signed a contract that was missing the key piece of consideration his client was receiving.

25.   At the time of signing the Donaire Contract, Donaire was not among the top fifteen flyweights in the IBF ratings and therefore was ineligible to challenge for the title held by Darchinyan. Thus Shaw could not have guaranteed him a chance to fight for Vic Darchinyan's title at the time of contracting.

26.   Darchinyan did not agree to fight Donaire until May 20, 2007, after Donaire had already signed the Donaire Contract (Darchinyan accepted the bout through his manager, who is not Jared Shaw as alleged in the Complaint).

27.    In July 2007, less than two months after his win on May 12, 2007, GSP provided Donaire with the opportunity that every boxer dreams of but which few receive: a world championship fight.

28.    Donaire made the most of the opportunity, winning the IBF's world flyweight (112-pound) championship by knockout. In the ring after the bout, Donaire thanked Gary Shaw on television "for giving me this opportunity."

29.    After becoming the IBF world champion, neither Donaire nor his experienced manager repudiated the Donaire Contract or contended it was illegal.

30.    Instead, Donaire continued to accept benefits and perform under the Donaire Contract. GSP negotiated and arranged a December 2007 world title defense on national television for Donaire, which he accepted, was paid for, and competed in successfully.

31.    After Donaire's December 2007 bout, Donaire and Dunkin asked for GSP's permission to try and arrange a bout for himself in Dubai with a foreign promoter ("the Dubai bout"). Although GSP was not the promoter of the fight and was within his rights to deny Donaire the chance to pursue this opportunity, GSP agreed to Donaire and Dunkin's request.

32.    The foreign promoter informed GSP that the Dubai bout would take place on March 27, 2008. Because he wanted to comply

with Donaire's wishes to fight in the Dubai bout, GSP did not
plan a bout for Donaire the first part of 2008.

33.   Gary Shaw visited Donaire in The Philippines.

34.   In order to aid Donaire's preparation for the Dubai
bout, GSP provided Donaire with an advance of ten thousand
dollars ($10,000.00) to conduct a proper training camp.

35.   Donaire accepted the ten thousand dollar advance from
GSP and signed a receipt.

36.   After months of delay, with at least three postponements,
the Dubai fight was cancelled through no fault of GSP's.

37.   Neither Donaire, Dunkin, nor anyone else timely provided
GSP with documents that the Dubai bout was cancelled. Accordingly,
GSP believed for some time that Donaire still was pursuing the
Dubai bout.

38.   Donaire never repaid the ten thousand dollar advance.

39.   Through Dunkin, Donaire wrongfully blamed GSP for his
inactivity, when such inactivity was due to Donaire's desire to
participate in the Dubai bout, the repeated postponements of the
Dubai bout, and the failure of Donaire and Dunkin to document
the cancellation of the Dubai bout.

40.   In light of the cancellation, GSP indicated it would
arrange another nationally televised fight for Donaire on GSP's
August 2nd show.

41.   Donaire breached his contract by refusing to box in any bouts promoted by GSP or otherwise honor the Donaire Contract.

42.   Dunkin is well known in the boxing industry for taking most, if not all, of the best boxers he manages exclusively to Top Rank. He is sometimes referred to as Top Rank's "house manager".

43.   Upon information and belief Dunkin has managed the following world champions or prominent boxers: Kelly Pavlik, Diego Corrales, Steve Johnston, Steven Luevano and Anthony Thompson. At one time or another, Dunkin helped all of these boxers sign promotional contracts with Top Rank.

44.   In breach of the Donaire Contract, Donaire and Dunkin began negotiating with Top Rank, a competitor of GSP.

45.   Top Rank's chief executive, Bob Arum, was notified by Gary Shaw of GSP that Donaire was under an exclusive promotional contract to GSP.

46.   Upon information and belief, Dunkin, as part of his close relationship with Top Rank, also informed Top Rank of the Donaire Contract.

47.   Despite the notice given by Gary Shaw to Bob Arum (and also by Dunkin upon information and belief), Top Rank offered Donaire the opportunity to fight on one of its big shows in Las

Vegas, in July or August (see Complaint at Exh. A, page 1 (listing July 26th bout for Donaire))

48.   Top Rank then signed Nonito Donaire to its own exclusive promotional contract.

49.   Donaire did not fight for Top Rank on July 26 or August 2nd but upon information and belief, Top Rank has Donaire under exclusive contract and is planning his next fight.

## ALLEGATIONS RELATING TO THE KIRKLAND CONTRACT

50.   On February 27, 2006 when James Kirkland signed his contract with GSP ("the Kirkland Contract", attached to Complaint as Exhibit I), he was an unrated and virtually unknown boxer who had not boxed professionally in over two years (See Complaint, Exhibit H (listing Kirkland's bouts)).

51.   In subsequent interviews, Kirkland has explained his two-plus years of inactivity by saying he was incarcerated.

52.   GSP negotiated the Kirkland Contract with Kirkland's co-managers, Dunkin and Michael Miller, an attorney in Texas.

53.   Miller and Dunkin are parties to the Kirkland Contract, and Miller signed the contract. Upon information and belief, Dunkin signed it as well although GSP has not located the copy signed by him.

54.   The Kirkland Contract provided that GSP would have the exclusive right to promote Kirkland's professional boxing

17

matches for at least three years. *See* Complaint, Exhibit I at
¶2.

55.   Despite Kirkland's past inactivity, GSP took a chance
on signing him, and provided him with a fifteen thousand dollar
($15,000.00) signing bonus plus a monthly stipend so that
Kirkland could devote himself fully to becoming a better boxer.

56.   From the time he signed the Kirkland Contract through
May 17, 2008, GSP arranged ten bouts for Kirkland, beginning on
May 5, 2006 (as with Donaire, Kirkland had a pre-arranged bout
with another promoter at the time he signed the Kirkland
Contract and GSP did not ask Kirkland to withdraw from that
bout).

57.   As Kirkland improved, Gary Shaw worked diligently to
promote his career, sending letters and attending the
conventions of the world rating organizations to successfully
lobby them for Kirkland's inclusions in the world ratings.

58.   GSP began arranging for Kirkland's fights to appear
on national television. Four fights were shown on Showtime
network's ShoBox: The Next Generation series.

59.   After the four Showtime fights, and as early as
January 2008, GSP and Kirkland's management team agreed to
pursue a bout for Kirkland that would be televised on HBO, the
most prestigious network in the boxing business.

60.   A deal was consummated whereby Kirkland would fight on HBO, but HBO did not provide a date for the fight until May 17, 2008.

61.   In light of the importance of the exposure provided by a fight on HBO (see Complaint at ¶27), Kirkland and his management agreed to wait for the May 17, 2008 bout and to forego lesser bouts in order to take advantage of the opportunity to appear on HBO.

62.   Based on the mutual decision to pursue an HBO bout instead of fights that would generate less exposure and money, GSP did not offer Kirkland any interim bout and was relieved of the obligation to do so.

63.   GSP maintains that it did not receive the letter included as Exhibit J in the Complaint. In any event, the letter incorrectly measured the term of the contract, as the contract year ended on the anniversary of Kirkland's first GSP fight, May 5, 2008.

64.   As Exhibit J states, Kirkland opted to fight on HBO rather than in two lesser fights.

65.   Kirkland signed for, and fought in the May 17, 2008 HBO fight and was paid for his performance.

66.   On June 17, 2008, Kirkland purported to terminate the Kirkland Contract.

67.   GSP indicated it would arrange an October 4, 2008 fight on HBO for Kirkland, and was willing to pay Kirkland a purse in excess of $100,000, but through his attorney, Kirkland indicated he would no longer fight in any bouts promoted by GSP, or otherwise honor the Kirkland Contract.

68.   Kirkland apparently has negotiated with a promoter named Chester Koerner and has agreed to fight for Koerner or a company owned by Koerner on September 5, 2008, in breach of his contractual obligations to GSP.

### FIRST CLAIM: BREACH OF CONTRACT
(against Donaire, Kirkland, Dunkin and Miller)

69.   Each of the preceding allegations is repeated as if fully set forth herein.

70.   Donaire and Dunkin are parties to the Donaire Contract (Exhibit B to the Complaint).

71.   Donaire and Dunkin have breached the Donaire Contract, causing damage to GSP.

72.   Kirkland, Miller and Dunkin are parties to the Kirkland Contract (Exhibit I to the Complaint).

73.   Kirkland, Miller and Dunkin have breached the Kirkland Contract, causing damage to GSP.

SECOND CLAIM: BREACH OF THE COVENANTS
OF GOOD FAITH AND FAIR DEALING
(against Donaire, Kirkland, Dunkin and Miller)

74.    Each of the preceding allegations is repeated as if
fully set forth herein.

75.    An obligation of good faith and fair dealing is
implied by law in both the Donaire and Kirkland contracts.

76.    Donaire and Dunkin have breached the implied good
faith and fair dealing in the Donaire Contract, causing damage
to GSP.

77.    Kirkland, Miller and Dunkin have breached the implied
good faith and fair dealing in the Kirkland Contract, causing
damage to GSP.

THIRD CLAIM: TORTIOUS INTERFERENCE WITH CONTRACT
(against Dunkin and Miller and Top Rank)

78.    Each of the preceding allegations is repeated as if
fully set forth herein.

79.    To the extent that Dunkin is not a party to the
Donaire Contract, and Dunkin and Miller are not parties to the
Kirkland Contract, they had knowledge of those contracts.

80.    Dunkin intentionally procured Donaire's breach of the
Donaire Contract, causing damage to GSP.

81.    By offering Donaire an exclusive promotional contract
and a fight on either July 26th or August 2nd, when it had
knowledge of the Donaire Contract, Top Rank intentionally

procured Donaire's breach of the Donaire Contract, causing damage to GSP.

82.    Dunkin and Miller intentionally procured Kirkland's breach of the Kirkland Contract, causing damage to GSP.

WHEREFORE, Gary Shaw Productions, LLC, requests that the Court enter judgment as follows:

A.    Awarding judgment to GSP in the amount of its damages sustained on all claims, which shall be determined at trial;

B.    Awarding injunctive relief declaring that the Donaire and Kirkland contracts with GSP remain in effect and forbidding Donaire and Kirkland to box for any promoter other than GSP;

C.    On the Third Claim, ordering an accounting of all revenues Top Rank, Inc. receives through the promotion of Nonito Donaire's boxing career and an award to GSP of such profits;

D.    Awarding GSP punitive damages where appropriate;

E.    Awarding GSP the costs of this action, including expenses, pre-judgment interest and attorney's fees; and

F.    Such other and further relief as may be deemed just and proper by the Court.

Dated:    New York, New York
          August 22, 2008

Respectfully submitted,

THE LUSTIGMAN FIRM, P.C.

By: _Scott Shff_____
    Scott Shaffer (SS-6560)
    Andrew B. Lustigman (AL-8209)
149 Madison Avenue, Suite 805
New York, New York 10016
Tel: (212) 683-9180
Fax: (212) 683.9181

Attorneys for Gary Shaw
Productions, LLC

### JURY DEMAND

Trial by jury is hereby requested on such issues as is legally

appropriate.

Dated:    New York, New York
         August 22, 2008

               Respectfully submitted,
               THE LUSTIGMAN FIRM, P.C.

               By: _Scott Shff_____
                  Scott Shaffer (SS-6560)
                  Andrew B. Lustigman (AL-8209)
               149 Madison Avenue, Suite 805
               New York, New York 10016
               Tel: (212) 683-9180
               Fax: (212) 683.9181

               Attorneys for Gary Shaw
               Productions, LLC

## CERTIFICATE OF SERVICE

I, Marie Carney, an employee of The Lustigman Firm, P.C.,
counsel for Gary Shaw Productions, LLC, do hereby certify that a
true and correct copy of the following document:

**AMENDED ANSWER, COUNTERCLAIM AND THIRD-PARTY COMPLAINT**

was served by electronic mail through the Court's ECF filing
system on the 22nd day of August, 2008 and also by first class
United States mail upon counsel for the plaintiffs in the within
action by depositing this document in a postage-paid envelope
addressed as indicated below and thereby causing it to be
delivered to:

>        Patrick English, Esq.
>        Dines And English, L.L.C.
>        685 Van Houten Ave.
>        Clifton, NJ 07013
>        E-mail: DinesandEnglish@aol.com

                              MARIE CARNEY
                              PARALEGAL